1  Elissa D. Miller (CA Bar No. 120029)
    *emiller@sulmeyerlaw.com*
2  Steven F. Werth (CA Bar No. 205434)
    *swerth@sulmeyerlaw.com*
3  **Sulmeyer**Kupetz
    A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
    Los Angeles, California  90071-1406
5  Telephone: 213.626.2311
    Facsimile: 213.629.4520
6
    [Proposed] Attorneys for Plaintiff
7  Richard K. Diamond, Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

| 11 | In re | Case No. 2:16-bk-12351-TD |
|----|-------|---------------------------|
| 12 | GARY MEEK, | Chapter 7 |
| 13 | Debtor. | Adv. No. _____ |
| 14 | | **COMPLAINT FOR:** |
| 15 | RICHARD K. DIAMOND, Chapter 7 Trustee, | **(1) AVOIDANCE OF VOIDABLE** |
| 16 | Plaintiff, | **TRANSFER PURSUANT TO 11 U.S.C. § 544 AND CC § 3439.04(a)(1);** |
| 17 | vs. | **(2) AVOIDANCE OF VOIDABLE TRANSFER PURSUANT TO** |
| 18 | JACQUELINE ANN MEEK, individually and in her capacity as Trustee of the MEEK | **11 U.S.C. § 544 AND CC § 3439.04(a)(2);** |
| 19 | FAMILY TRUST dated November 3, 1998, | **(3) AVOIDANCE OF VOIDABLE TRANSFER PURSUANT TO** |
| 20 | Defendants. | **11 U.S.C. § 544 AND CC § 3439.05;** |
| 21 | | **(4) RECOVERY OF TRANSFERRED PROPERTY OR VALUE THEREOF;** |
| 22 | | **(5) PRESERVATION OF AVOIDED** |
| 23 | | **TRANSFER;** |
| 24 | | **(6) TURNOVER OF PROPERTY;** |
| 25 | | **(7) DECLARATORY RELIEF; AND** |
| 26 | | **(8) AN ACCOUNTING** |
| 27 | | |
| 28 | | |

EDM\2560431.1

1    For his "Complaint for: (1) Avoidance of Voidable Transfers; (2) Recovery of Property or

2    Value Hereof; (3) Preservation of Avoided Transfers; (4) Turnover of Property; (5) Declaratory

3    Relief; and (6) an Accounting" (the "Complaint"), plaintiff Richard K. Diamond ("Plaintiff"), the

4    duly appointed, qualified, and acting chapter 7 trustee for the estate of Gary Meek, the above-

5    captioned debtor (the "Debtor"), hereby alleges as follows:

6    **STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

7    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(1) and

8    1334(a).  This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).  This

9    action is a proceeding arising in and/or related to the bankruptcy case of *In re Gary Meek,* Bk.

10    Case No. 2:16-bk-12351-TD (the "Bankruptcy Case"), which is a case under chapter 7 of title 11

11    of the United States Code, 11 U.S.C. § 101 *et seq.*, (the "Bankruptcy Code"), and which is

12    pending in the United States Bankruptcy Court for the Central District of California, Los Angeles

13    Division (the "Bankruptcy Court" or "Court").  Regardless of whether this proceeding is core,

14    non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the

15    Bankruptcy Court.

16    2.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

17    **PARTIES**

18    3.    Plaintiff is the duly appointed, qualified, and acting chapter 7 trustee of the

19    Debtor's bankruptcy estate (the "Estate").  Plaintiff brings this action solely in his capacity as the

20    chapter 7 trustee.  To the extent that Plaintiff hereby asserts claims under 11 U.S.C. § 544(b),

21    Plaintiff is informed and believes and, on that basis alleges thereon, that there exists in this case

22    one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or that are not

23    allowable only under 11 U.S.C. § 502(e) who could have avoided the respective transfers or

24    obligations under California or other applicable law before the Debtor's petition was filed.

25    4.    Plaintiff was appointed after the filing of the Bankruptcy Case.  As a result,

26    Plaintiff may not have personal knowledge of certain facts alleged in this Complaint that occurred

27    prior to his appointment and, to the extent that is the case, Plaintiff alleges all such facts on

28    information and belief.  To the extent Plaintiff may not have personal knowledge of any other

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  facts alleged herein, whether relating to acts and events before or after his appointment, all such

2  facts are alleged on information and belief.  Plaintiff reserves the right to amend this Complaint to

3  allege additional claims against one or more of the above-captioned defendants, to challenge,

4  avoid, and/or recover transfers other than and in addition to those alleged in this Complaint, to

5  name additional defendants, and to otherwise amend this Complaint.

6      5.    Plaintiff is informed and believes, and based thereon alleges, that defendant

7  Jacqueline Ann Meek ("Jacqueline" and sometimes together with the Debtor, the "Meeks"), is an

8  individual residing in the State of California, in the County of Los Angeles, in this judicial

9  district.  Plaintiff is further informed and believes, and based thereon alleges, that at all relevant

10  times, Jacqueline was and is married to the Debtor.

11      6.    Plaintiff is informed and believes, and based thereon alleges, at all relevant times,

12  that Jacqueline and Debtor are the Trustees of the "MEEK FAMILY TRUST dated November 3,

13  1998" (the "Trust" and sometimes together with Jacqueline (the "Defendants"), and further that

14  the Trust is administered within the County of Los Angeles, State of California.

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

16      7.    Plaintiff is informed and believes, and based thereon alleges, that Jacqueline and

17  the Debtor were married in 1991.

18      8.    Plaintiff is informed and believes, and based thereon alleges, that on or about

19  November 3, 1998, Jacqueline and the Debtor entered into a "Meek Family Trust Agreement," a

20  revocable trust, pursuant to which Jacqueline and Debtor became co-trustees of the Trust.

21      9.    Plaintiff is informed and believes, and based thereon alleges, that on or around July

22  22, 2003, Debtor and Jacqueline, trustees of the Trust, acquired a fee simple interest in a residence

23  located at 1535 Linda Vista Avenue, Pasadena, California, 91103-1954, Assessor's Parcel

24  Number 5704-021-022 (the "Residence") pursuant to a Grant Deed recorded on July 22, 2003 as

25  Document No. 032079012, a true an correct copy of which is attached hereto as **Exhibit "1"** and

26  by this reference made a part hereof.

27      10.    Plaintiff is informed and believes, and based thereon alleges, that on or about May

28  24, 2006 in connection with a refinance of the Residence, the Debtor and Jacqueline, as trustees

1   of the Trust, conveyed the Residence to "Gary Elbert Meek and Jacqueline Ann Meek, Husband

2   and Wife, as Community Property" pursuant a Grant Deed recorded on May 24, 2006 as

3   Document No. 061137779, a true and correct copy of which is attached as **Exhibit "2"** and by

4   this reference made a part hereof.

5         11.    Plaintiff is informed and believes, and based thereon alleges, that on or about May

6   24, 2006 the Meeks, "Husband and Wife as Community Property," executed and Delivered to

7   Lender HMS Capital, Inc. a Deed of Trust, which document was recorded on May 24, 2006 as

8   Document No. 061137780, a true and correct copy of which is attached as **Exhibit "3"** and by

9   this reference made a part hereof.

10        12.    Plaintiff is informed and believes, and based thereon alleges, that on or about May

11  24, 2006, the Meeks transferred the Residence back to the Debtor and Jacqueline, as trustees of

12  the Trust pursuant to a Grant Deed recorded on May 24, 2006 as Document No. 0611137781, a

13  true and correct copy of which is attached as Exhibit "4" and by this reference made a part hereof

14        13.    Plaintiff is informed and believes, and based thereon alleges, that in or about

15  February, 2012, Debtor acquired a 100% interest in A.V. Respiratory Services, Inc. ("AVRS"), a

16  California Corporation.

17        14.    Plaintiff is informed and believes, and based thereon alleges, that at the time

18  Debtor acquired AVRS, AVRS was in the business of leasing oxygen tanks to Medicare patients

19  for which it billed Medicare and was paid by Medicare.

20        15.    Plaintiff is informed and believes, and based thereon alleges, that on or about

21  February 16, 2012, in connection with his acquisition of AVRS, AVRS, as borrower, entered into

22  a written Business Loan Agreement with East West Bank ("Lender") pursuant to which AVRS

23  borrowed the principal amount of $2,165,000.00 (the "Loan") and executed a U.S. Small Business

24  Administration Note in the principal amount of $2,165,000.00 (the "Note").

25        16.    Plaintiff is informed and believes, and based thereon alleges, that pursuant to the

26  terms of the Note, AVRS promised to repay to Lender the principal amount of $2,165,000.00,

27  together with interest as set forth in the Note, payable in monthly installments beginning one

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   month from the month of initial disbursement and continuing monthly thereafter until February

2   27, 2022, when the remaining unpaid balance would all be due and payable.

3       17.    Plaintiff is informed and believes, and based thereon alleges, that in connection

4   with the Loan, on or about February 16, 2012, the Debtor executed a written U.S. Small Business

5   Administration Unconditional Guarantee ("Guarantee") pursuant to which the Debtor guaranteed

6   to Lender the full payment, performance and satisfaction of the indebtedness of AVRS under the

7   Note.

8       18.    Plaintiff is informed and believes, and based thereon alleges, that in connection

9   with obtaining the Loan from Lender, Debtor and Jacqueline executed and delivered to Lender a

10  Personal Financial Statement ("Financial Statement") identifying their assets and liabilities.  The

11  Trustee is further informed and believe that the Debtor and Jacqueline agreed that Lender could

12  look to the couple's community property, including the Residence, in the event of a default on the

13  Loan. A true copy of the Financial Statement is attached as **Exhibit "5"**, and by this reference

14  made a part hereof.

15      19.    Plaintiff is informed and believes, and based thereon alleges, that in connection

16  with obtaining the Loan, Debtor provided financial information for AVRS which reflected that

17  approximately 75% of AVRS's revenue was derived from Medicare billings, and that at that time,

18  Medicare was paying AVRS nearly $200 per month for each portable oxygen unit leased by

19  AVRS.

20      20.    Plaintiff is informed and believes, and based thereon alleges, that on July 1, 2013,

21  Round 2 of the Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies

22  Competitive Bidding Program under the Medicare Prescription Drug, Improvement, and

23  Modernization Act of 2003 (the "Bidding Program") took effect and that pursuant to the Bidding

24  Program, Medicare instituted new payment rates for oxygen, oxygen equipment, and supplies sold

25  and or leased in Los Angeles, which rates, on average, were 45% less than the amounts Medicare

26  was previously paying.

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    21.    Plaintiff is informed and believes, and based thereon alleges, that as a result of the

2    implementation of the Bidding Program, after July 1, 2013, AVRS's reimbursement rate for

3    Medicare business declined by approximately 45%.

4    22.    Plaintiff is informed and believes, and based thereon alleges, that as a result of the

5    implementation of the Bidding Program, commencing July 1, 2013, AVRS was required to be

6    approved as a Medicare "Contract Supplier" in order to continue to lease oxygen equipment to

7    Medicare patients.

8    23.    Plaintiff is informed and believes, and based thereon alleges that AVRS was never

9    approved as a Medicare "Contract Supplier" under the Bidding Program and, therefore, while

10    AVRS could continue collecting from Medicare under existing portable oxygen lease agreements

11    at the reduced rate, it could not bill Medicare for new leases entered into after July 1, 2013.

12    24.    Plaintiff is informed and believes, and thereon alleges, that after July 1, 2013 and

13    the implementation of the Bidding Program, AVRS income declined significantly and, therefore,

14    its value.

15    25.    Plaintiff is informed and believes that after July 1, 2013 and as a result of the

16    AVRS decline in income, the Debtor and Jacqueline sought and obtained the assistance from an

17    asset protection attorney. Plaintiff is further informed and believes, and based thereon alleges,

18    that on or about November 14, 2013, Debtor and Jacqueline entered into a written transmutation

19    agreement (the "Transmutation Agreement"), a true copy of which is attached as **Exhibit "6"**,

20    and by this reference made a part hereof.

21    26.    Plaintiff is informed and believes, and based thereon alleges, that pursuant to the

22    terms of the Transmutation Agreement, the Debtor and Jacqueline agreed that, among other

23    things: (a) the parties would transmute all of their current and after-acquired property, currently

24    held as community property, to their respective separate property, and (b) each party and his/her

25    respective separate property would be relieved of all responsibility for any community or separate

26    property debts or obligations incurred by the other party.

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

EDM\ 2560431.1                    6

27. Plaintiff is informed and believes, and based thereon alleges, that prior to entering into the Transmutation Agreement, the Debtor and Jacqueline did not obtain a valuation of, among other of the assets, AVRS.

28. Plaintiff is informed and believes, and based thereon alleges, that as a result of the Transmutation Agreement, the following community property assets were deemed the separate property of the Debtor (the "Retained Assets"):

    a.     All of the shares of common stock of AVRS, including all of the its liabilities and business with a stated value of $661,750.00

    b.     A 0.151425% membership interest in HLHZ Investments II, LLC, a California limited liability company, with a stated value of $22,000.

    c.     A one-half interest as a tenant in common in Chase Premier Checking Account No. 000008770249677 with a stated balance of $28,821.20.

    d.     A 2009 Acura TL automobile, having a stated blue book value of $17,221, encumbered by a security interest in the principal amount of $20,000, for a net book value of 0.

    e.     All of the Debtor's personal clothing, jewelry and personal effects.

29. Plaintiff is informed and believes, and based thereon alleges, that as a result of the Transmutation Agreement, the following community property assets were deemed to be Jacqueline's separate property (these assets are hereafter referred to as the "Transmuted Assets", and the transmutation of the Transmuted Assets from the parties' community property to the separate property of the Jacqueline is hereafter referred to as the "Transfers"):

    a.     The Residence, with stated equity of $275,000.00.

    b.     A 2.165968% limited partnership interest in Globe Composite Solutions, Ltd., a Maryland limited partnership, with a stated value of $150,000.00.

    c.     A Fidelity Advisors Managed Brokerage Account No. Z47105422, with a stated balance of $284,607.01.

    d.     A Fidelity IRA Advisor Managed Brokerage Account No. 166108324, with a stated balance of $198,881.23.

    e.     A one-half interest as tenant in common in Chase Premier Checking Account No. 000008770249677, with a stated balance of $28,821.20.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

f.    A Chase Premier Checking Account No. 000000920968354, with a stated balance of $58,633.54.

g.    2011 Volvo XC60 T6 Sport Utility automobile, with a stated blue book value of $25,750.00.

h.    All of Jacqueline Meek's personal clothing, jewelry and personal effects.

30.    Pursuant to the agreement of the Meeks as set forth in the Transmutation Agreement, the value of the Retained Assets (Debtor's assets), not including AVRS, was $50,821.20 and if AVRS was included, $ 712,571.20.  Pursuant to the agreement of the Meeks as set forth in the Transmutation Agreement, the value of the Transmuted Assets (Jacqueline's assets was $1,021,692.98, approximately $300,000 more than the value of the assets allocated to the Debtor if AVRS at its ten stated value was included or over $975,000 more iv AVRS is not.

31.    Plaintiff is informed and believes, and based thereon alleges, that prior to the Debtor entering into the Transmutation Agreement, Debtor's creditors, including the Lender could look to the community property assets of the Debtor and Jacqueline, which assets included, among other things, the Residence, to obtain repayment of any amounts owing by the Debtor to them.

32.    Plaintiff is informed and believes, and based thereon alleges, that after entering into the Transmutation Agreement, the Debtor claimed he and Jacqueline held no community property assets.

33.    Plaintiff is informed and believes, and based thereon alleges, that Jacqueline never contributed any sole and separate property to the community to compensate for the value of the community property transferred to her as a result of the Transmutation Agreement.

34.    Plaintiff is informed and believes, and based thereon alleges, that on or about the date that Debtor and Jacqueline entered into the Transmutation Agreement, AVRS owed Lender in excess of $1 million and that Debtor was also liable to Lender for this amount as a guarantor under the Guarantee.

35.    Plaintiff is informed and believes, and based thereon alleges, that on or about December 27, 2013, the Debtor and Jacqueline as the trustees of the Trust, conveyed all of the

1    Trust's interest in the Residence to the Trust "as the sole and separate property of Jacqueline Ann

2    Meek" for no consideration pursuant to a Grant Deed recorded on December 27, 2013 as

3    Document No. 20131815432, a true copy of which is attached as **Exhibit "7"** and by this

4    reference made a part hereof.  In addition, on the same date, the Debtor recorded a Memorandum

5    of Transmutation Agreement as Document No. 20131815433, a true and copy of which is

6    attached as **Exhibit "8"** and by this reference made a part hereof.

7          36.    Plaintiff is informed and believes, and based thereon alleges  that on and after the

8    date of the Transmutation Agreement, the Debtor has resided in the Residence.

9          37.    Plaintiff is informed and believes, and based thereon alleges, that on or about June

10    1, 2014, AVRS failed to make its regularly scheduled payment to Lender and failed to make any

11    payments due thereafter.

12          38.    Plaintiff is informed and believes, and based thereon alleges, that Debtor and

13    Jaqueline entered into the Transmutation agreement with the intent to remove their community

14    property from the reach of their creditors, including the Lender.

15          39.    Plaintiff is informed and believes, and based thereon alleges, that subsequent to

16    AVRS's failure to make the June 1, 2014 payment, Lender accelerated the unpaid balance due on

17    the Note and made demand upon AVRS and the Debtor, as the Guarantor, for payment, but that

18    both AVRS and the Debtor failed and refused to pay the sums then due.

19          40.    Plaintiff is informed and believes, and based thereon alleges, that on or about

20    September 18, 2014, Lender filed a complaint against the Debtor and Jaqueline, among other

21    parties, in the Superior Court of California, County of Los Angeles, commencing a case captioned

22    *East West Bank v. A.V. Respiratory Services., Inc., et al.*, Case No. KC067109J (the "Litigation")

23    asserting, among others, causes of action for breach of contract, common counts, breach of

24    guarantee and against Jacqueline for, among other things, fraudulent transfer based on the

25    Transmutation Agreement.

26          41.    Plaintiff is informed and believes, and based thereon alleges, that at no time prior

27    to the commencement of the Litigation did the Debtor or Jacqueline notify Lender of the

28    existence of the Transmutation Agreement or the Transfer.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

42.     Plaintiff is informed and believes, and based thereon alleges, that on or about September 30, 2015, Debtor stipulated to the entry of a judgment in favor of Lender against Debtor and AVRS in the amount of $2,040,667.00 (the "Stipulation") and that Judgment Pursuant to the Stipulation was entered on October 9, 2015 (the "Judgment").  A true copy of the Stipulation and Judgment are attached collectively as **Exhibit "9"** and by this reference made a part hereof.

43.     Plaintiff is further informed and believes and thereon alleges that Lender's complaint against Jacqueline was dismissed without prejudice.

### FIRST CLAIM FOR RELIEF

### (For Avoidance Of Transfers As Voidable Transfers Pursuant To

### 11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(1))

44.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1- 43, inclusive, of this complaint as though set forth in full.

45.     The Transfers pursuant to the Transmutation Agreement, and each of them occurred with four years of the Petition Date.

46.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor made and entered into the Transmutation Agreement and made the Transfers pursuant thereto, and each of them, with the actual intent to hinder, delay and/or defraud Debtor's creditors in that, among other things,

    a.     at all relevant times, the Defendants were insiders of the Debtor;

    b.     the Transmutation Agreement was not disclosed to Lender or Debtor's other creditors and the Transfers, other than the recordation with regard to the Residence, were concealed

    c.     at or about the time of the Transfers, and each of them, the Debtor was aware that AVRS's income would be substantially reduced by virtue of the Bidding Program and that AVRS would not be able to repay its obligation to Lender when due, triggering the Debtor's obligation on the Guaranty;

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1      d.      at or about the time of the Transfers, and each of them, the Debtor was

2 aware that AVRS's income would be substantially reduced by virtue of the Bidding Program and,

3 therefore, the value of AVRS as stated in the Transmutation Agreement was inflated;

4      e.      the value of the Residence as stated in the Transmutation Agreement was

5 understated;

6      f.      the Transfers, and each of them, effectuated a transfer of substantially all of

7 the Debtor's assets in that, among other things, the assets with which the Debtor was left

8 following the Transmutation Agreement had little to no value or had values far less than the

9 values of the property transferred to Jacqueline, as set forth in Paragraph 31, hereinabove;

10      g.      the value of the consideration the Debtor received (if any) in exchange for

11 the Transfers, and each them, was not reasonably equivalent to the value of the assets transferred

12 to Jacqueline;

13      h.      the Debtor was insolvent at the time of the Transmutation Agreement or

14 became insolvent as a result of or shortly after the Agreement; and

15      i.      the Transfers occurred after the Debtor incurred substantial debt, including,

16 but not limited to, the Lender.

17      47.      Interest on the Transfers, and each of them, or the value of each Transfer, has

18 accrued and continues to accrue, and/or the value of each of the Transferred Property has

19 increased, and continues to increase, from the date of each Transfer.

20      a.      Plaintiff is entitled to an order and/or judgment that each Transfer is

21 avoided and/or providing any other remedy available under applicable law.

22      **SECOND CLAIM FOR RELIEF**

23      **(For Avoidance Of Transfers As Voidable Transfer Pursuant To 11 U.S.C. § 544**

24      **and Cal. Civil Code § 3439.04(a)(2))**

25      48.      Plaintiff realleges and incorporates herein by reference each and every allegation

26 contained in paragraphs 1 through 47, inclusive, of this complaint as though set forth in full.

27      49.      The Transfers, and each of them, occurred within four years of the Petition Date.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   50.   Plaintiff is informed and believes, and based thereon alleges, that at the time of the

2   Transfers, and each of them, the Debtor: (a) was engaged in or was about to be engaged in a

3   business or a transaction for which the remaining assets of the Debtor were unreasonably small in

4   relation to the business or transaction; and/or (b) intended to incur, or believed or reasonably

5   should have believed that he would incur, debts beyond his ability to pay as they became due.

6   51.   Plaintiff is entitled to an order and/or judgment that each Transfer is avoided

7   and/or providing any other remedy available under applicable law

8   **THIRD CLAIM FOR RELIEF**

9   **(For Recovery Of Voidable Transfers Pursuant To Pursuant To 11 U.S.C. § 544**

10   **and Cal. Civil Code § 3439.05)**

11   52.   Plaintiff realleges and incorporates herein by reference each and every allegation

12   contained in paragraphs 1 through 51, inclusive, of this complaint as though set forth in full.

13   53.   The Transfers, and each of them, occurred within four years of the Petition Date.

14   54.   Plaintiff is informed and believes and thereon alleges that there was at least one

15   creditor whose claim arose prior to the Transfers.

16   55.   Plaintiff is informed and believes, and based thereon alleges, that the Debtor made

17   the Transfers without receiving a reasonably equivalent value in exchange for the Transfers and

18   was insolvent at the time of the Transfers or became insolvent as a result of the Transfers.

19   **FOURTH CLAIM FOR RELIEF**

20   **(For Recovery Of Avoided Transfers Under 11 U.S.C. § 550)**

21   56.   Plaintiff realleges and incorporates herein by reference each and every allegation

22   contained in paragraphs 1 through 51, inclusive, of this complaint as though set forth in full.

23   57.   The Transfers, and each of them, occurred within four years of the Petition Date.

24   58.   Plaintiff is informed and believes, and based thereon alleges, that the Transfer is a

25   transfer that should be avoided pursuant to § 544 of the Bankruptcy Code as alleged in this

26   Complaint and, based thereon, Plaintiff is entitled to avoid the Transfer.

27

28

EDM\ 2560431.1                                      12

1    59.    Plaintiff is informed and believes, and based thereon alleges, that Jacqueline is the

2    initial transferee of the Transfer within the meaning of 11 U.S.C. § 550(a), or an immediate or

3    mediate transferee of the initial transferee.

4    60.    Plaintiff is entitled to an order and/or judgment for the recovery of the Transmuted

5    Assets, or the value hereof, including any increase in the value of the Transmuted Assets since the

6    date of the Transfer, together with interest at the applicable rate from the date of the Transfer, for

7    the benefit of the estate.

8                              **FIFTH CLAIM FOR RELIEF**

9              **(For Preservation Of Transfers Avoided Under 11 U.S.C. § 551)**

10    61.    Plaintiff realleges and incorporates herein by reference each and every allegation

11    contained in paragraphs 1 through 60, inclusive of this complaint as though set forth in full.

12    62.    Plaintiff is entitled to an order and/or judgment preserving, for the benefit of the

13    estate, the Transfer once avoided.

14                              **SIXTH  CLAIM FOR RELIEF**

15              **(For Turnover Of Property Under 11 U.S.C. § 542(a))**

16    63.    Plaintiff realleges and incorporates herein by reference each and every allegation

17    contained in paragraphs 1 through 62, inclusive, of this complaint as though set forth in full.

18    64.    Plaintiff is informed and believes, and based thereon alleges, that the Transmuted

19    Assets are property of the estate.

20    65.    Plaintiff is informed and believes, and based thereon alleges, that the Transmuted

21    Assets are property that Plaintiff may use, sell, or lease under 11 U.S.C. § 363, and that such

22    property is not of inconsequential value or benefit to the estate.

23    66.    Plaintiff is informed and believes, and based thereon alleges, that Jacqueline is a

24    person, other than a custodian, in possession, custody, or control, during this bankruptcy case, of

25    the Transmuted Assets.

26    67.    Plaintiff is entitled to an order and/or judgment for the turnover of the Transmuted

27    Assets, or the value thereof, or such other amounts due and owing and subject to recovery,

28    together with interest at the applicable rate.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## SEVENTH CLAIM FOR RELIEF

### (For Declaratory Relief)

68.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 43, inclusive, of this complaint as though set forth in full.

69.    Plaintiff is informed and believes, and based thereon alleges, that an actual controversy exists between Plaintiff, on the one hand, and Defendants, on the other hand, relating to the effect and enforceability of the Transmutation Agreement and the Transfers effected thereby.

70.    Plaintiff contends that the Transmutation Agreement was a sham, designed to place assets outside the reach of the Debtor's creditors and/or in furtherance of a scheme to defraud the Debtor's creditors.

71.    Plaintiff further contends that, despite the Transmutation Agreement, the Transmuted Assets are property of the Estate.

72.    Plaintiff further contends that the Transmuted Assets should be treated in ownership, status, and character as if the Transfer did not occur.

73.    Plaintiff further contends that, by virtue of the Debtor's unrestricted control over the Trust, and ability to use the Trust and the Transferred assets for his benefit, the Transmuted Assets, even if not expressly identified in this Complaint, are property of the Debtor's estate as that term is defined in section 541 of the Bankruptcy Code.

74.    Plaintiff is informed and believes, and based thereon alleges, that Defendants and each of them, dispute each of Plaintiff's contentions in paragraphs 64 through 68 above.

75.    As a result of the foregoing controversies and disputes, a judicial declaration of one or more of the following is necessary and appropriate: (a) that the Transmutation Agreement and the Transfers effected thereby, was a sham, designed, entered, and/or executed with the intent of placing the Transmuted Assets outside the reach of the Debtor's creditors and/or in furtherance of a scheme to defraud the Debtor's creditors; (b) that, despite the Transmutation Agreement, the Transmuted Assets are property of the Estate; (c) that upon avoidance of the Transfer and/or recovery of the property subject to the Transfer, including the Residence, is property of the Estate;

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 (d) that the Transmuted Assets should be treated in ownership, status, and character as if the

2 Transfer did not occur, and (e) that, by virtue of the Debtor's unrestricted control over the Trust

3 and the Transmuted Assets, and ability to use all for his benefit, the Transmuted Assets are

4 property of the Estate, as that term is defined in section 541 of the Bankruptcy Code.

**EIGHTH CLAIM FOR RELIEF**

**(For An Accounting)**

7   76. Plaintiff realleges and incorporates herein by reference each and every allegation

8 contained in paragraphs 1 through 43 of this complaint, inclusive, as though set forth in full.

9   77. Plaintiff is informed and believes, and based thereon alleges, that Jacqueline has

10 failed and continues to fail to turn over the Transmuted Assets.

11   78. The information necessary for Plaintiff to determine the exact amount of monies

12 owing to Plaintiff by the Debtor from the Transmuted Assets is in the exclusive possession,

13 custody, or control of the Defendant.

14   79. During the respective post-petition time periods in which the Transmuted Assets

15 have been utilized by the Defendants, the Defendants failed to provide the Plaintiff with an

16 accounting such that the Plaintiff could determine the extent of the funds due and owing to the

17 Plaintiff.

18   80. By this Complaint, Plaintiff demands such accounting.

19   **WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants Jacqueline

20 Ann Meek, individually and in her capacity as Trustee of the Meek Family Trust dated November

21 3, 1998, and each of them, as follows:

22   **ON THE FIRST CLAIM FOR RELIEF:**

23   1. That the Transfers be avoided and/or providing any other remedy available under

24 applicable law;

25   **ON THE SECOND CLAIM FOR RELIEF:**

26   2. That the Transfers be avoided and/or providing any other remedy available under

27 applicable law;

28

*SulmeyerKupetz, A Professional Corporation*
*333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR*
*LOS ANGELES, CALIFORNIA 90071-1406*
*TEL 213.626.2311 • FAX 213.629.4520*

1   **ON THE THIRD CLAIM FOR RELIEF:**

2       3.      That the Transfers be avoided and/or providing any other remedy available under

3   applicable law;

4   **ON THE FOURTH CLAIM FOR RELIEF:**

5       4.      For the recovery of the Transmuted Assets, or the value thereof, including any

6   increase in the value of the Transmuted Assets since the date of the Transfers, with interest at the

7   applicable rate from the date of the Transfers, for the benefit of the estate;

8   **ON THE FIFTH CLAIM FOR RELIEF:**

9       5.      Preserving, for the benefit of the estate, the Transmuted Assets once the Transfers

10  are avoided;

11  **ON THE SIXTH CLAIM FOR RELIEF:**

12      6.      For the turnover of the Transmuted Assets, or the values thereof, or such other

13  amounts due and owing and subject to recovery, together with interest at the applicable rate;

14  **ON THE SEVENTH CLAIM FOR RELIEF:**

15      7.      For a judicial declaration of, one or more of the following: (a) that the

16  Transmutation Agreement and the Transfers pursuant thereto were a sham, designed, entered,

17  and/or executed with the intent of placing the Transmuted Assets outside the reach of the Debtor's

18  creditors and/or in furtherance of a scheme to defraud the Debtor's creditors; (b) that, despite the

19  Transfers, the Transmuted Assets are property of the Estate; (c) that upon avoidance of the

20  Transfers and/or recovery of the Transmuted Assets, including the Residence, is property of the

21  Estate; (d) that the Transmuted Assets should be treated in ownership, status, and character as if

22  the Transfers did not occur, and (e) that, by virtue of the Debtor's unrestricted control over the

23  Trust, and ability to use the Trust assets for his own benefit, the Transmuted Assets are property

24  of the Estate, as that term is defined in section 541 of the Bankruptcy Code.

25  **ON THE EIGHTH CLAIM FOR RELIEF:**

26      8.      For the accounting described in the seventh claim for relief herein.

27  **ON ALL CLAIMS FOR RELIEF:**

28      9.      For costs of suit incurred herein, including, without limitation, attorney's fees; and

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1        10.    For such other and further relief as is just and proper.

2  Dated: August 22, 2016

**Sulmeyer**Kupetz
A Professional Corporation

By: */s/ Elissa D. Miller*
     Elissa D. Miller
     [Proposed] Attorneys for Plaintiff
     Richard K. Diamond, Chapter 7 Trustee

# EXHIBIT 1

**This page is part of your document - DO NOT DISCARD**

03 2079012

```
RECORDED/FILED IN OFFICIAL RECORDS
          RECORDER'S OFFICE
        LOS ANGELES COUNTY
            CALIFORNIA

      JUL 22 2003      AT 8 A.M.
```

## TITLE(S) : _____ DEED _____



L E A D   S H E E T

**FEE**

| FEE $30 | RR |
|---|---|
| A.F.N.F. 94 | 2 |

D.T.T
1375.

**CODE**
20

**CODE**
19

**CODE**
9

NOTIFICATION SENT-94 ®

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.

**Number of Parcels Shown**

5704·021·022          001

**THIS FORM NOT TO BE DUPLICATED**

FIRST AMERICAN TITLE COMPANY LOS ANGELES

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

GARY E. MEEK
JACQUELINE ANN MEEK
1535 LINDA VISTA AVENUE
PASADENA, CALIFORNIA 91103

03 2079012

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

Assessor's Parcel No. 5704-021-022

# GRANT DEED

The undersigned grantor(s) declare(s):
Documentary transfer tax is**$1,375.00**
( ) computed on full value of the interest of property conveyed, or
( ) computed on the full value less the value of liens or encumbrances
    remaining thereon at the time of sale.
(X) City of: PASADENA, CA

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

JOHN A. DICK and LISA A. DICK
**hereby GRANTS(S) TO**

GARY ELBERT MEEK AND JACQUELINE ANN MEEK, AS TRUSTEES OF THE MEEK FAMILY TRUST, DATED
NOVEMBER 3, 1998.
the following described real property in the City of PASADENA, County of LOS ANGELES,
State of California:

LOT 4 OF TRACT 11098, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA,
AS PER MAP RECORDED IN BOOK 207 PAGE 8 AND 9 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

Dated: _____ JUNE 13, 2003 _____

STATE OF CALIFORNIA,

COUNTY OF LOS ANGELES ) SS
On JULY 15, 2003 before me
D.A. GLASSETT ,
a Notary Public in and for said state,
personally appeared JOHN A. DICK AND
LISA A. DICK
personally known to me (or proved to me on the
basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me
that he/she/they executed the same in
his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the
instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed
the instrument.
WITNESS my hand and official seal.

Signature _____
Title Order No. 1021459-60

JOHN A. DICK

LISA A. DICK

D. A. GLASSETT
Commission # 1300575
Notary Public - California
Los Angeles County
My Comm. Expires Apr 18, 2005

(This area for official notarial seal)

Escrow or Loan No. 50289-010
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

1021459-60

3

## ILLEGIBLE NOTARY DECLARATION

## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY _____ D . A GLASSETT

DATE COMMISSION EXPIRES _____ APR 18, 2005

NOTARY IDENTIFICATION NUMBER _____ 1300575

MANUFACTURER / VENDOR IDENTIFICATION NUMBER _____ NNA1

PLACE OF EXECUTION _____ NORWALK

DATE _____ 7/22/03

SIGNATURE (FIRM NAME IF ANY)

03 2079012

# EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**

**06 1137779**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
05/24/06 AT 08:00am**

**TITLE(S) :**          **DEED**



L E A D   S H E E T

**FEE**


FEE
$7
FF

**D.T.T.**

**CODE
20**

**CODE
19**

**CODE
9**_____

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**


5704 · 021 · 022          001

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:
CHICAGO TITLE COMPANY

AND WHEN RECORDED MAIL TO:

Mr. and Mrs. Gary Elbert Meek
1535 Linda Vista Avenue
Pasadena, CA 91103

**06 1137779**

| Title Order No.: 608556324-S20 | | Escrow No.: 060161-06 |
|---|---|---|
| | **GRANT DEED** | THIS SPACE FOR RECORDER'S USE ONLY: |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $NONE**
[ ] computed on full value of property conveyed, or NO CONSIDERATION
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of Pasadena AND
This conveyance transfers the grantors interest from/into his or her revocable living trust, R&T 11911

This document is being recorded as an accommodation only and Chicago Title Company assumes no responsibility for correctness or validity thereof.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**GARY ELBERT MEEK AND JACQUELINE ANN MEEK, AS TRUSTEES OF THE MEEK FAMILY TRUST, DATED NOVEMBER 3, 1998**

hereby GRANT(s) to:

**GARY ELBERT MEEK AND JACQUELINE ANN MEEK, HUSBAND AND WIFE, AS COMMUNITY PROPERTY**

the real property in the City of Pasadena, County of Los Angeles, State of California, described as:

LOT 4 OF TRACT 11098, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 207 PAGE 8 AND 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
Also Known as: 1535 Linda Vista Avenue, Pasadena, CA 91103
AP#: 5704-021-022

DATED February 16, 2006
STATE OF CALIFORNIA
COUNTY OF _Los Angeles_
On _12 May 2006_
Before me, _John Pur Notary Public_
A Notary Public in and for said State, personally appeared
_Gary Elbert Meek_
_Jacqueline Ann Meek_

GARY ELBERT MEEK, TRUSTEE

JACQUELINE ANN MEEK, TRUSTEE

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

JOHN PUR
Comm. #1497986
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires JULY 26, 2008

This conveyance changes the manner in which title is held, grantor(s) and grantee(s) remain the same and continue to hold the same proportionate interest. R & T 11911 "

Signature _____                    (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

05/24/06

# EXHIBIT 3

▲   **This page is part of your document - DO NOT DISCARD**   ▲

**06 1137780**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
05/24/06 AT 08:00am**

**TITLE(S) :**

▲



L E A D   S H E E T

FEE                                    D.T.T.

FEE $ *9 / FF*
DAF $ *2—*
C-20            *29*

CODE
20

CODE
19

CODE
9____

NOTIFICATION SENT 94 ◎

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.   **Number of AIN's Shown**

▲   **THIS FORM IS NOT TO BE DUPLICATED**   ▲

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY

**06  1137780**

Recording Requested By:
HMS CAPITAL, INC.

And After Recording Return To:
HMS CAPITAL, INC.
ONE BAXTER WAY, SUITE 300
WESTLAKE VILLAGE, CALIFORNIA 91362-3899
Loan Number: 0601610000

*[handwritten]* 10080506324

——————————————————— [Space Above This Line For Recording Data] ———————————————————

# DEED OF TRUST

MIN: 1001408-0601610000-9

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated  MAY 9, 2006                , together with all Riders to this document.
**(B)** "Borrower" is GARY ELBERT MEEK AND JACQUELINE ANN MEEK, HUSBAND AND WIFE AS COMMUNITY PROPERTY


Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is HMS CAPITAL, INC.

Lender is a CALIFORNIA CORPORATION                                organized
and existing under the laws of  CALIFORNIA
Lender's address is ONE BAXTER WAY, SUITE 300, WESTLAKE VILLAGE, CALIFORNIA 91362-3899

**(D)** "Trustee" is CHICAGO TITLE COMPANY, 16969 VON KARMAN #150, IRVINE, CALIFORNIA 92606

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated  MAY 9, 2006
The Note states that Borrower owes Lender ONE MILLION ONE HUNDRED FORTY-SEVEN THOUSAND AND 00/100                   Dollars (U.S. $ 1,147,000.00      ) plus interest.

———————————————————————————————————————————————————————————————

DocMagic *eFerms* 800-649-1362
www.docmagic.com

C3005I.mzd.1.tem
Order: Doc: 2006-1137780 TDD 05-24-2006                Page 7 of 44                Created By: Maria Villa  Printed: 3/14/2016 1:08:21 PM

24

3

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JUNE 1, 2036 .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY    of         LOS ANGELES                 :

[Type of Recording Jurisdiction]               [Name of Recording Jurisdiction]

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 2 of 14

DocMagic *eRorms* 800-649-1362
www.docmagic.com

**06 1137780**

Ca3005.mad.2.tcm

Order: Doc: 2006-1137780 TDD 05-24-2006                 Page 8 of 44

Created By: Maria Villa   Printed: 3/14/2016 1:08:21 PM

25

05/24/06

4

LOT 4 OF TRACT 11098, IN THE CITY OF PASADENA, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 207
PAGE 8 AND 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.
A.P.N.: 5704-021-022

which currently has the address of  1535 LINDA VISTA AVENUE
                                                      [Street]

PASADENA                    , California    91103         ("Property Address"):
    [City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      *DocMagic eRorms* 800-649-1362
Form 3005 01/01                          Page 3 of 14                              www.docmagic.com

06 1137780

05/24/06

Ca30053.mad.3.tem
Order: Doc: 2006-1137780 TDD 05-24-2006                    Page 9 of 44              Created By: Maria Villa  Printed: 3/14/2016 1:08:22 PM

26

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT · MERS     *DocMagic eForms* 800-649-1362
Form 3005 01/01                         Page 4 of 14                                        www.docmagic.com

06 1137780

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 5 of 14        DocMagic eForms 800-649-1362
www.docmagic.com
06 1137780

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 6 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

06 1137780

Ca30056.mxd.6.tem

Order:  Doc: 2006-1137780 TDD 05-24-2006                  Page 12 of 44                  Created By: Maria Villa  Printed: 3/14/2016 1:08:22 PM

29

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 7 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

06 1137780

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic *eFarms* 800-649-1362
Form 3005 01/01        Page 8 of 14        www.docmagic.com

06 1137780

Ca3005d.mxd.8.tem
Order: Doc: 2005-1137780 TDD 05-24-2006        Page 14 of 44        Created By: Maria Villa  Printed: 3/14/2016 1:08:23 PM

31

*10*

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

**06· 1137780**

Cs30059.mzd.9.tem
Order: Doc: 2006-1137780 TDD 05-24-2006                 Page 15 of 44        Created By: Maria Villa  Printed: 3/14/2016 1:08:23 PM

32

05/24/06

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

**06  1137780**

*DocMagic eForms* 800-649-1362
www.docmagic.com

33

*12*

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

**06 1137780**

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

05/24/06

*13*

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

05/24/06

**06 1137780**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                         Page 12 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

Ca300512.mzd.12.tem

Order: Doc: 2006-1137780 TDD 05-24-2006                    Page 18 of 44                    Created By: Maria Villa  Printed: 3/14/2016 1:00:23 PM

35

*14*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
GARY ELBERT MEEK          -Borrower

_____ (Seal)
JACQUELINE ANN MEEK       -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:                        Witness:

_____        _____

05/24/06

**06 1137780**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                  Page 13 of 14              DocMagic *eRoms* 800-649-1362
                                                            www.docmagic.com

Ca300513.mad.13.tem

*15*

State of California    )
                       ) ss.
County of  Los Angeles )

On *12, May 2006*  before me, *John Pun Notary Public*

personally appeared  GARY ELBERT MEEK, JACQUELINE ANN MEEK

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

```
JOHN PUN
Comm. # 1497986
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires JULY 29, 2006
```

_____
NOTARY SIGNATURE

*John Pun*
_____
(Typed Name of Notary)

NOTARY SEAL

05/24/06

**06  1137780**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 14 of 14                    DocMagic eForms  800-649-1362
                                                                         www.docmagic.com

Ca300514.mzd.14.tem

Order:  Doc: 2006-1137780 TDD 05-24-2006              Page 20 of 44        Created By: Maria Villa  Printed: 3/14/2016 1:08:24 PM

37

*16*

————————— [Space Above This Line For Recording Data] —————————

# InterestOnly ADJUSTABLE RATE RIDER

(One-Month **LIBOR** Index (As Published in *The Wall Street Journal*) – Rate Caps)

After Recording Return To:   HMS CAPITAL,  INC.
ONE BAXTER WAY, SUITE 300
WESTLAKE VILLAGE, CALIFORNIA 91362-3899
Loan Number: 0601610000
MIN: 1001408-0601610000-9

Prepared By:

CONV
● MULTISTATE InterestOnly ADJUSTABLE RATE RIDER - ONE MONTH LIBOR INDEX
FE-4203 (0311)                                    Page 1 of 5

Initials:

05/24/06

## 06  1137780

*17*

THIS ADJUSTABLE RATE RIDER is made this   9th          day of  MAY  2006     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed
to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  HMS CAPITAL, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

         1535 LINDA VISTA AVENUE, PASADENA, CALIFORNIA 91103
                        [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows·

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
    The Note provides for an initial interest rate of    5.125 %. The Note provides for changes in the
interest rate and the monthly payments, as follows:

"4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A) Change Dates
    The interest rate I will pay will change on the   1st    day of JULY, 2006   ,
and on that day every   1st    month thereafter. Each date on which my interest rate could change is
called a "Change Date."
    (B) The Index
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for one month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 15
days before each Interest Rate Change Date is called the "Current Index."

CONV
● MULTISTATE InterestOnly ADJUSTABLE RATE RIDER - ONE MONTH LIBOR INDEX
FE-4269 (0311)                          Page 2 of 5

Initials:

**06 1137780**

U3426971.cw

18

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding ZERO AND 000/1000 percentage points (    .000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to (i) pay the accruing monthly interest at my new interest rate for all payments prior to the First Principal and Interest Payment Due Date, or (ii) repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments for all payments prior to the First Principal and Interest Payment Due Date. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

My interest rate will never be greater than 12.000 % or less than    .000 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after June 1, 2016    ."

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE RIDER - ONE MONTH LIBOR INDEX
FE-4269 (0311)                                                            Page 3 of 5

Initials:

05/24/06

06 1137780

*19*

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
● MULTISTATE InterestOnly ADJUSTABLE RATE RIDER - ONE MONTH LIBOR INDEX
FE-4269 (0311)                                Page 4 of 5

Initials:

05/24/06

**06 1137780**

2D

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
GARY ELBERT MEEK                                    - Borrower

_____ (Seal)
JACQUELINE ANN MEEK                                 - Borrower

_____ (Seal)
                                                    - Borrower

_____ (Seal)
                                                    - Borrower

CONV
● MULTISTATE InterestOnly ADJUSTABLE RATE RIDER  ONE MONTH LIBOR INDEX
FE-4268 (0311)                          Page 5 of 5

05/24/06

**06 1137780**

2|

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THOSE PORTIONS OF THE
DOCUMENT WHICH ARE ILLEGIBLE TO WHICH THIS STATEMENT IS
ATTACHED READ THE SAME AS ON THE FOLLOWING PAGE(S).

PLACE OF EXECUTION: IRVINE, CA

DATE: 5/23/2006

BY: _____

JENNIFER HILL

05/24/06

06 1137780

22

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

05/24/06

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 6 of 14
DocMagic *eFerms* 800-649-1362
www.docmagic.com

06 1137780

Ca3005e.mad.6.tem

23

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

**06 1137780**

Ca30057.mzd.7.tem
Order: Doc: 2006-1137780 IDO 05-24-2006          Page 28 of 44          Created By: Maria Villa Printed: 3/14/2016 1:08:25 PM

45

24

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

06 1137780

05/24/06

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 8 of 14                    DocMagic eFerms 800-649-1362
                                                                                   www.docmagic.com

Ca30058.mzd.8.tem

Order:  Doc: 2006-1137780 TDD 05-24-2006                    Page 29 of 44          Created By: Maria Villa  Printed: 3/14/2016 1:08:26 PM

46

25

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

05/24/06

## 06 1137780

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 9 of 14

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Cx30059.mxd.9.tem

Order: Doc: 2006-1137780 TDD 05-24-2006                    Page 30 of 44

Created By: Marla Villa  Printed: 3/14/2016 1:08:26 PM

47

24

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

05/24/06

· **06  1137780**

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                 Page 10 of 14              DocMagic *eRorms* 800-649-1362
                                                                           www.docmagic.com

Ca300510.mzd.10.tem

Order:  Doc: 2006-1137780 TDD 05-24-2006                Page 31 of 44          Created By: Maria Villa  Printed: 3/14/2016 1:08:26 PM

48

27

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

## 06  1137780

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                  Page 11 of 14                  DocMagic eFϙϙϙϙϙ 800-649-1362
www.docmagic.com

Ca300511.mzd.11.tem
Order:  Doc: 2006-1137780 TDD 05-24-2006                Page 32 of 44              Created By: Maria Villa  Printed: 3/14/2016 1:08:26 PM

49

28

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

05/24/06

**06 1137780**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 12 of 14                    *DocMagic* 800-649-1362
www.docmagic.com

Ca3005l2.mzd.12.tem
Order: Doc: 2006-1137780 TDD 05-24-2006             Page 33 of 44             Created By: Maria Villa  Printed: 3/14/2016 1:08:26 PM

50

29

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
GARY ELBERT MEEK          -Borrower

_____ (Seal)
JACQUELINE ANN MEEK        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:

_____

Witness:

_____

05/24/06

06 1137780

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                     Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

Ca300513.mzd.13.tem
Order:  Doc: 2006-1137780 TOD 05-24-2006                Page 34 of 44                Created By: Maria Villa    Printed: 3/14/2016 1:08:27 PM

30

State of California )
) ss.
County of )

On before me,

personally appeared  GARY ELBERT MEEK, JACQUELINE ANN MEEK

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY SIGNATURE

_____
(Typed Name of Notary)

NOTARY SEAL

05/24/06

06 1137780

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 14 of 14

DocMagic *eFancms* 800-649-1362
www.docmagic.com

Ca3005l4.mzd.14.tem
Order:  Doc: 2006-1137780 100 05-24-2006                    Page 35 of 44                    Created By: Maria Villa  Printed: 3/14/2016 1:08:27 PM

52

# EXHIBIT 4

▲ **This page is part of your document - DO NOT DISCARD** ▲

**06 1137781**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
05/24/06 AT 08:00am**

**TITLE(S) :**     **DEED**

_____

▲  ▲

L E A D    S H E E T

| **FEE** | | **D.T.T.** |
|---|---|---|


FEE
$7
FF

**CODE
20**

**CODE
19**

**CODE
9____**

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.    **Number of AIN's Shown**

5704 · 001 · 022                    09

▲    **THIS FORM IS NOT TO BE DUPLICATED**    ▲

2

RECORDING REQUESTED BY:
CHICAGO TITLE COMPANY

AND WHEN RECORDED MAIL TO:

06 1137781

Mr. and Mrs. Gary Elbert Meek
1535 Linda Vista Avenue
Pasadena, CA  91103

THIS SPACE FOR RECORDER'S USE ONLY:

| Title Order No.: 608556324-S20 | Escrow No.: 060161-06 |
|---|---|

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $NONE**
[ ] computed on full value of property conveyed, or NO CONSIDERATION
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Pasadena AND
This conveyance transfers the grantors interest from/into his or her revocable living trust, R&T 11911

*This document is being recorded as an accommodation only and Chicago Title Company assumes no responsibility for correctness or validity thereof.*

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**GARY ELBERT MEEK AND JACQUELINE ANN MEEK, HUSBAND AND WIFE, AS COMMUNITY PROPERTY**

hereby GRANT(s) to:

**GARY ELBERT MEEK AND JACQUELINE ANN MEEK, AS TRUSTEES OF THE MEEK FAMILY TRUST, DATED NOVEMBER 3, 1998**

the real property in the City of Pasadena, County of Los Angeles, State of California, described as:

LOT 4 OF TRACT 11098, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 207 PAGE 8 AND 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
Also Known as: 1535 Linda Vista Avenue, Pasadena, CA  91103
AP#: 5704-021-022

DATED February 16, 2006
STATE OF CALIFORNIA
COUNTY OF *Los Angeles*
On *12, May 2006*
Before me, *John Pun Notary Public*
A Notary Public in and for said State, personally appeared
*Gary Elbert Meek*
*Jacqueline Ann Meek*

*Gary Elbert Meek, Trustee*
GARY ELBERT MEEK

*Jacqueline Ann Meek*
JACQUELINE ANN MEEK

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

JOHN PUN
Comm. #1497986
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires JULY 29, 2008

*This conveyance changes the manner in which title is held, grantor(s) and grantee(s) remain that same and continue to hold the same proportional interest, R & T 11911*

Signature _____    (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

05/24/06

# EXHIBIT 5

02/24/2012 12:18 FAX                                                                                          @002



OMB APPROVAL NO. 3245-0188
EXPIRATION DATE: 09/30/2014

# PERSONAL FINANCIAL STATEMENT

As of _Aug 31,2011_

**U.S. SMALL BUSINESS ADMINISTRATION**

Complete this form for: (I) each proprietor; (2) general partner; (3) managing member of a limited liability company (LLC); (4) each owner of 20% or more of the equity of the Applicant (including the assets of the owner's spouse and any minor children); and (5) any person providing a guaranty on the loan. Return completed form to: 7(a) loans - to the lender processing the SBA application; 504 loans - to the Certified Development Company processing the SBA application; Disaster loans - to the Disaster Processing and Disbursement Center at 14925 Kingsport Road, Fort Worth, TX 76155-2243; and 8(a)/BD applicants who are individuals claiming social and economic disadvantaged status and their spouses - electronically at http://www.sba.gov or send hard copy with paper application to either of the two following offices:

| 8(a) BD only | Mail to the following address, if your firm is located in one of the states below: | Mail to the following address, if your firm is located in one of the states below: |
|---|---|---|
| | US Small Business Administration<br>DPCE Central Office Duty Station<br>Parkview Towers<br>1150 First Avenue<br>10th Floor, Suite 1001<br>King of Prussia, PA 19406 | Small Business Administration<br>Division of Program Certification and Eligibility<br>455 Market Street, 6th Floor<br>San Francisco, CA 94105 |
| | MA, ME, NH, CT, VT, RI, NY, PR (Puerto Rico), VI (US Virgin Islands), NJ, PA, MD, VA, WV, DC, DE, GA, AL, NC, SC, MS, FL, KY, TN | IL, OH, MI, IN, MN, WI, TX, NM, AR, LA, OK, MO, IA |

Name      Gary E. Meck and Jacqueline Ann Meck                                      Business Phone    (661)951-0011

Residence Address    1535 Linda Vista Ave                                           Residence Phone    (626)583-0878

City, State, & Zip Code    Pasadena                        CA        91103-

Business Name of Applicant/Borrower    A.V. Respiratory Services, Inc.

| ASSETS | (Omit Cents) | | LIABILITIES | (Omit Cents) |
|---|---|---|---|---|
| Cash on hand & in Banks .................... $ | 139,606 | | Accounts Payable ........................ $ | 0 |
| Savings Accounts ........................... $ | 0 | | Notes Payable to Banks and Others .......... $ | 28,918 |
| IRA or Other Retirement Account ........... $ | 266,294 | | (Describe in Section 2) | |
| (Describe in Section 5) | | | Installment Account (Auto) ................ | 0 |
| Accounts & Notes Receivable ............... $ | 354,651 | | Mo. Payments      $ _____ 0 | |
| (Describe in Section 5) | | | Installment Account (Other) ............... $ | 42,091 |
| Life Insurance–Cash Surrender Value Only ... $ | 0 | | Mo. Payments      $ _____ | |
| (Complete Section 8) | | | Loan on Life Insurance .................... $ | 0 |
| Stocks and Bonds ........................... $ | 265,461 | | Mortgages on Real Estate ................. $ | 1,147,000 |
| (Describe in Section 3) | | | (Describe in Section 4) | |
| Real Estate .................................. $ | 1,446,300 | | Unpaid Taxes ........................... $ | 0 |
| (Describe in Section 4) | | | (Describe in Section 6) | |
| Automobiles - Total Present Value ........... $ | 30,000 | | Other Liabilities ......................... $ | 0 |
| (Describe in Section 5, and include | | | (Describe in Section 7) | |
| Year/Make/Model) | | | Total Liabilities ........................ $ | 1,217,709 |
| Other Personal Property ..................... $ | 200,000 | | | |
| (Describe in Section 5) | | | Net Worth .............................. $ | 2,134,803 |
| Other Assets ................................ $ | 850,000 | | | |
| (Describe in Section 5) | | | | |
| Total   $ | 3,352,512 | | Total   $ | 3,352,512 |

| Section 1.   Source of Income | | | Contingent Liabilities | | |
|---|---|---|---|---|---|
| Salary ....................................... $ | 756,872 | | As Endorser or Co-Maker .................... $ | 0 |
| Net Investment Income ...................... $ | 0 | | Legal Claims & Judgments .................. $ | 0 |
| Real Estate Income ......................... $ | 0 | | Provision for Federal Income Tax ........... $ | 0 |
| Other Income (Describe below)* ............ $ | 131,101 | | Other Special Debt ........................ $ | 0 |

Description of Other Income in Section 1.

Interest and Dividends

*Alimony or child support payments need not be disclosed in "Other Income" unless it is desired to have such payments counted toward total income.

SBA Form 413 (08-11) Previous Editions Obsolete

This form was electronically produced by PCFS 2000.

p. 1                                                                    Feb 24 12 11:57a

55

02/24/2012 12:17 FAX                                                          ☑003

**Section 2. Notes Payable to Banks and Others.** (Use attachments if necessary. Each attachment must be identified as a part of this statement and signed.)

| Name and Address of Noteholder(s) | Original Balance | Current Balance | Payment Amount | Frequency (monthly, etc.) | How Secured or Endorsed Type of Collateral |
|---|---|---|---|---|---|
| Chase (HELOC) | $500,000.00 | $28,618.00 | $57.00 | Monthly | Real Estate |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Section 3. Stocks and Bonds.** (Use attachments if necessary. Each attachment must be identified as a part of this statement and signed.)

| Number of Shares | Name of Securities | Cost | Market Value Quotation/Exchange | Date of Quotation/Exchange | Total Value |
|---|---|---|---|---|---|
| 0 | Various Liquid Investments - Fidelity | | | | $265,461.00 |
| | | | | | |
| | | | | | |

**Section 4. Real Estate Owned.** (List each parcel separately. Use attachment if necessary. Each attachment must be identified as a part of this statement and signed.)

| | Property A | Property B | Property C |
|---|---|---|---|
| Type of Real Estate (e.g. Primary Residence, Other Residence, Rental Property, Land, etc.) | SFR | | |
| Address | 1535 Linda Vista Ave Pasadena CA    91103 | | |
| Date Purchased | 07/2003 | | |
| Original Cost | $1,250,000.00 | | |
| Present Market Value | $1,445,300.00 | | |
| Name & Address of Mortgage Holder | Merrill Lynch | | |
| Mortgage Account Number | 5003647 | | |
| Mortgage Balance | $1,147,000.00 | | |
| Amount of Payment per Month/Year | $238.95 / | $2,867.52 | / | / |
| Status of Mortgage | Current | | |

**Section 5. Other Personal Property and Other Assets.** (Describe, and if any is pledged as security, state name and address of lien holder, amount of lien, terms of payment and if delinquent, describe delinquency)

Partnership Interest of $650,000
Personal Property of $200,000

**Section 6. Unpaid Taxes.** (Describe in detail, as to type, to whom payable, when due, amount, and to what property, if any, a tax lien attaches.)

N/A

**Section 7. Other Liabilities.** (Describe in detail.)

N/A

SBA Form 413 (08-11) Previous Editions Obsolete                                    2

This form was electronically produced by PCFS 2000.

56

02/24/2012 12:17 FAX                                                                                    ☑004

| Section 8. Life Insurance Held.    (Give face amount and cash surrender value of policies - name of insurance company and beneficiaries) |
|---|

Face Amount of $2,000,000
Cash Surrender Value: N/A
Insurance Company: John Hancock Life Insurance Company
Benificiry: Gary E. Meek

I authorize SBA/Lender to make inquiries as necessary to verify the accuracy of the statements made and to determine my creditworthiness.
**CERTIFICATION:** (to be completed by each person submitting the information requested on this form)

By signing this form, I certify under penalty of criminal prosecution that all information on this form and any additional supporting information submitted with this form is true and complete to the best of my knowledge. I understand that SBA or its participating Lenders, or Certified Development Companies will rely on this information when making decisions regarding an application for a loan from SBA or an SBA Participating Lender, or for participation in the SBA 8(a) Business Development (BD) program.

| Signature | _Gary Meek (signature)_ | Date | Sep 20, 2011 |
|---|---|---|---|
| Print Name | Gary E. Meek | Social Security No. | ▇▇▇▇ |
| Signature | _Jacqueline Meek (signature)_ | Date | Sep 20, 2011 |
| Print Name | Jacqueline Ann Meek | Social Security No. | ▇▇▇▇ |

**NOTICE TO LOAN APPLICANTS: CRIMINAL PENALTIES AND ADMINISTRATIVE REMEDIES FOR FALSE STATEMENTS:**

Knowingly making a false statement on this form is a violation of Federal law and could result in criminal prosecution, significant civil penalties, and a denial of your loan. A false statement is punishable under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, a false statement is punishable under 18 U.S.C. § 1014 by imprisonment of not more than 30 years and/or a fine of not more than $1,000,000.

**NOTICE TO APPLICANTS OR PARTICIPANTS IN THE 8(a) BD PROGRAM:** CRIMINAL PENALTIES AND ADMINISTRATIVE REMEDIES FOR FALSE STATEMENTS:

Any person who misrepresents a business concern's status as an 8(a) Program participant or SDB concern, or makes any other false statement in order to influence the 8(a) certification or other review process in any way (e.g., annual review, eligibility review), shall be: (1) Subject to fines and imprisonment of up to 5 years, or both, as stated in Title 18 U.S.C. § 1001; (2) subject to fines of up to $500,000 or imprisonment of up to 10 years, or both, as stated in Title 15 U.S.C. § 645; (3) Subject to civil and administrative remedies, including suspension and debarment; and (4) Ineligible for participation in programs conducted under the authority of the Small Business Act.

| PLEASE NOTE: | The estimated average burden hours for the completion of this form is 1.5 hours per response. If you have questions or comments concerning this estimate or any other aspect of this information, please contact Chief, Administrative Branch, U.S. Small Business Administration, Washington, D.C. 20416, and Clearance Officer, Paper Reduction Project (3245-0188), Office of Management and Budget, Washington, D.C. 20503. PLEASE DO NOT SEND FORMS TO OMB. |
|---|---|

This form was electronically produced by PCFS 2000.

p. 1                                                                                    Feb 24 12 11:59a

57

# EXHIBIT 6

## TRANSMUTATION AGREEMENT OF GARY MEEK AND JACQUELINE MEEK

This Agreement is entered into this 14th day of November, 2013, at Los Angeles, California, by GARY MEEK, ("GARY"), a married man and current resident and domiciliary of Los Angeles County, California, and JACQUELINE MEEK ("JACQUELINE"), a married woman and current resident and domiciliary of Los Angeles County, California, who have entered into this Agreement for the following reasons and with reference to the following facts:

I.   WHEREAS, the parties to this Agreement are now husband and wife.  They do not intend or contemplate the dissolution of their marriage or a separation;

II.  WHEREAS, the parties to this Agreement, in the interest of mutual understanding, intend and desire to define their respective rights in the property of the other, and to avoid such interests which, except for the operation of this Agreement, they might acquire in the property of the other as incidents of their marital relationship including, but not limited to, through the operation of the community property laws of California;

III. WHEREAS, the parties desire that all property owned by either of them shall be and remain their respective separate property, except as stated to the contrary herein;

IV.  WHEREAS, the parties desire to transmute all of their current and after-acquired property from community property to their respective separate property, in

1

58

accordance with the provisions of §850 of the California *Family Code*.

NOW, THEREFORE, in consideration of the undertakings of each of them, one to the other as set forth herein, the parties hereby agree as follows:

1.    The parties understand, acknowledge and agree that the facts recited herein are correct and shall be conclusively presumed to be true between them in accordance with *Evidence Code* §622.

2.    This Agreement is intended to and shall be governed by California law including, but not limited to, *Family Code* §§850-853, and other applicable California statutes and case law.

3.    Each of the parties intends that the other party shall enter into this Agreement in reliance on the facts recited herein.

4.    Each party made available to the other party such information concerning such properties as he/she requested and each party acknowledges having the opportunity to learn the full and complete nature and extent of the assets and debts of the other party.   Neither party has requested any additional representations as to the identity, nature, extent, character, value or amount of the other's assets or debts.

5.    Except as specifically stated to the contrary herein, GARY and JACQUELINE agree that all property

2

including, but not limited to, the property set forth in
Exhibit A, which is incorporated herein by this
reference, ("GARY'S PROPERTY"), shall be and ·shall remain
GARY's sole and separate property. GARY shall have sole
management and control over GARY's PROPERTY, and GARY'S
PROPERTY shall be subject to his disposition as his
separate property in the same manner as if GARY and
JACQUELINE had never married. All of GARY'S PROPERTY,
whether real or personal, regardless of whether it is
listed herein or disclosed, owned by GARY at the effective
date of this Agreement and property thereafter acquired by
GARY, any and all income, and all appreciation in value of
the property, whether the income or appreciation is due to
market conditions. or GARY's services, skills, efforts or
otherwise, is, shall be, and shall forever remain, GARY's
sole and separate property.

6.    Except as specifically stated to the contrary
herein, JACQUELINE and GARY agree that all property·
including, but not limited to, the property· set forth in
Exhibit· B, which is incorporated herein by this
reference, ("JACQUELINE'S    PROPERTY")    shall    remain
JACQUELINE's sole and separate property.    JACQUELINE shall
have sole management and control over JACQUELINE'S PROPERTY,
and JACQUELINE'S PROPERTY. shall be subject to her
disposition as her separate property in the same manner as
if no marriage had occurred. All of JACQUELINE'S PROPERTY,
whether real or personal, regardless of whether it is
listed herein or disclosed, owned by JACQUELINE, at the
effective date of this Agreement and property thereafter
acquired by JACQUELINE, any and all income, and all
appreciation in value of the property, whether the income

3

60

or appreciation is due to market conditions or JACQUELINE's services, skills, efforts or otherwise, is, shall be, and shall remain, JACQUELINE's sole and separate property.

7.   The parties agree that their wages, salaries, commissions and income earned from their personal services, skills and efforts during the marriage shall be the separate property of the party who earned the income and all property acquired therewith shall be the separate property of the earning party.   In this regard, GARY and JACQUELINE are advised that each party, during the marriage, may devote substantial time and efforts to his/her separate property business interests.   Despite the fact that JACQUELINE  and GARY shall devote substantial time and efforts to his/her business interests, neither party shall acquire any interest in the other party's business interests, nor acquire any interest in the wages, salaries, commissions and income earned by GARY or JACQUELINE as a result thereof.

8.   The parties acknowledge they discussed the cases of *Marriage of Moore* (1980), 28 Cal. 3rd 366, *Marriage of Marsden* (1982), 130 Cal. App. 3rd 426, and their progeny, with their counsel and specifically waive and release any right, title or interest which they might otherwise acquire in or to the separate property of the other by virtue of the holdings of those cases or any other similar provisions of California law.

9.   Any property interest acquired by GARY and JACQUELINE jointly during their marriage or prior thereto which is not GARY'S PROPERTY or JACQUELINE'S PROPERTY shall

4

61

be the joint property of GARY and JACQUELINE. All joint property shall be deemed to be owned in equal shares by JACQUELINE and GARY and shall be subject to GARY's and JACQUELINE's joint management and control.

A.    Except as specifically stated to the contrary herein, any separate property of any kind or nature, including cash, which is transferred or paid in connection with the acquisition or maintenance of property standing in the joint names of the parties shall nevertheless retain its separate property character.

B.    Any joint loan or proceeds from a joint loan transaction are conclusively presumed to be the parties' joint property. In the event GARY'S PROPERTY or JACQUELINE'S PROPERTY is used to service a joint property debt, the party contributing the separate property shall be entitled to reimbursement from the other party, dollar for dollar, to the extent that such party contributed separate property to the payment. Reimbursement shall be without interest or adjustment for changes in monetary value and may not exceed the net value of the property. The amount reimbursable shall not include property used for payments of interest on the loan or payments for maintenance, insurance or taxation of the property.

C.    Notwithstanding the provisions of this paragraph 9 defining joint property, neither party should assume that community/joint property is contemplated or that community/joint property shall in fact ever be created during the marriage. It is the mutual intention of the parties that no community property interest shall be created.

5

62

10. Except as specifically stated to the contrary herein, the parties agree all rents, issues, profits, capital gains, increases, appreciation and income from their separate property shall remain the separate property of the recipient/earner of same.

11. The parties acknowledge either party may devote considerable time, skill and effort to the management of the party's separate property and the investment and management of the rents, issues, profits, capital gains, increases, appreciation and income derived from same. The parties agree that, notwithstanding the expenditure of their time, skill and effort might create a community interest in the other's separate property in the absence of this Agreement, neither party shall acquire any community interest in the other's separate property as a result of the expenditure of their time, skill and effort, and any rents, issues, profits, capital gains, increases, appreciation or income attributable to their time, skill and effort shall remain their separate property.

12. The parties hereby waive and release any and all right, title or interest which he/she might otherwise acquire in the separate property of the other party by virtue of the time, skill or effort which the other party may devote to the management of his/her separate property and the rents, issues, profits, increases, appreciation and income derived therefrom. In this connection, the parties acknowledge he/she discussed the cases of *Pereira v. Pereira* (1909), 156 Cal. 1, and *Van Camp v. Van Camp* (1921), 53 Cal. App. 17, with his/her respective counsel, and specifically waive and release any right, title or interest

6

which they might otherwise acquire in or to the separate property of the other by virtue of those cases, "reverse *Pereira/Van Camp*," or any other similar provision of California law.

13. Except as specifically stated to the contrary herein, the occurrence of commingling or otherwise failing to segregate the separate property or separate income, if any, of either party shall not change or constitute a change of character of that property, nor shall it constitute a transmutation of that separate property or income into community, quasi-community, or joint property. However, any money deposited, under the sum of $5,000 per deposit, by either party into a joint financial institution account, which account shall be established and maintained for their usual and recurring household expenses, shall be deemed commingled, shall lose its separate property character and become the joint property of the parties, in which each party shall have an equal interest.

14. Each party shall have the absolute and unrestricted right to manage, sell, lease or dispose of his/her separate property.

15. Each party may use their separate property to purchase property in his/her name, including real property, and have title vested indicating the property is held by a married person as his/ her sole and separate property, and the other party, upon request, shall execute an interspousal transfer deed or any other deed or document reasonably required to affirm such title in the requesting party as their sole and separate property.

7

64

16.   Notwithstanding any provision in this Agreement to the contrary, either party may transfer, transmute, convey, devise, or bequeath any property to the other as his/her separate property; provided, however, that any such transfer, transmutation, conveyance, devise, or bequest of property having a value greater than $5,000 shall be solely and exclusively evidenced by an instrument in writing and shall comply with the transmutation requirements of *Family Code* §§850 et seq., and the relevant California case law interpreting said statutes.

A.   Such writing shall state whether the transferor is waiving rights to separate property reimbursement and, in the absence thereof, the transfer shall not extinguish or waive any rights with respect thereto.

B.   In the case of real property, any such conveyance from one party to the other shall be made by an executed, acknowledged and delivered deed, declaration of trust or other document, which recites on its face that the property is conveyed to the other party as his/her sole and separate property or other form of ownership as the case may be.

C.   In the case of personal property having a value greater than $20,000, which has no form of record ownership (excluding clothing, jewelry including engagement and wedding rings, and other items of a personal nature which do not require a writing for transfer), any such transfer from one party to the other shall be made by a writing which recites on its face that the property is transferred to the other party as his/her sole and separate property or other form of ownership as the case may be.

8

D.   Any property which the parties may acquire from a third party as joint tenants or tenants in common, whether real, personal or mixed, shall be owned by the parties as their interest may appear from the deed, certificate or other document of title.

17.  The parties agree that each party and his/her respective separate property are relieved of all responsibility for any separate property debts or obligations incurred by the other party, whether before or during their marriage.  In addition, joint or community property debt in excess of $5,000 shall not be created including, without limitation, any debts incurred by either party through credit cards or any other credit liens, without the prior knowledge and written consent of both parties.

18.  The election, if any, by the parties, after their marriage, to file Federal or State income tax returns on a joint rather than an individual basis shall not constitute the creation of  community property or any other rights or interests in contravention of the provisions of this Agreement.

A.   In the event the parties do file joint income tax returns, each party's separate property shall be liable to bear the share of taxes, interest and penalties attributable to that party's separate property income included in the joint return.

B.   For this purpose, the tax amounts to be considered to be attributable to the separate property income of a party shall bear the same proportion of the applicable tax amount as the separate property income in a

9

66

particular income category bears to all of the net income
from that category giving rise to the applicable tax.
Losses for tax purposes shall be similarly assigned to the
party incurring the loss.

19.   The parties agree that he/she shall willingly, at
the request of the other party, or his/her successors or
assigns, execute, acknowledge and deliver whatever
additional documents may be required to carry out the
intention of this Agreement, and shall execute, acknowledge
and deliver any deeds or other documents in order that good
and marketable title to any separate property owned by
either party can be conveyed free from any claim of the
other party.

20.   Except as specifically provided to the contrary
herein, the parties agree that either of them may dispose
of their separate property by gift or by will, pursuant to
the terms of any inter vivos trust or agreement, or by any
other documents having testamentary or donative effect, in
such manner as each of them desires and as though they were
unmarried persons.   Any property received by gift or will
shall be the separate property of the party who received
the gift or the inheritance.

21.   The parties acknowledge that they may acquire one
or more properties as tenants in common or as joint tenants.
The parties further acknowledge that the right to seek a
judicial partition is a property right inherent in the
ownership of property.   The parties hereby mutually waive
and release their right to partition any parcel of property
in which they might in the future own as tenants in common

or as joint tenants.   The parties further agree that each shall have the right to obligate the other to execute and record a writing waiving and releasing his/her right to partition any parcel they own as tenants in common or as joint tenants.   The parties hereto further agree that this waiver and release of the right to partition any parcel of property in which the parties hereto have an interest shall burden each such parcel of property, shall "run with the land" and be binding upon any and all successors in interest in the property.

22.   The parties acknowledge he/she did not make nor entered into any agreement of any kind, oral or written, express or implied, respecting his/her marital property rights and obligations, other than as set forth in this Agreement, which Agreement he/she is signing freely and voluntarily.   The parties are aware that from time to time, for convenience, one or both of them may make statements that do not objectively reflect the terms of this Agreement; the parties are further aware that they may file joint income tax returns and engage in other conduct that does not objectively reflect the terms of this Agreement, any or all of which might provide a basis for claiming that the parties, or either of them, acted inconsistently with the terms of this Agreement and that this Agreement was thereby intentionally or inadvertently altered, amended or rescinded by the statements or conduct of the parties, or either of them.   However, the parties acknowledge and agree the purpose of this Agreement would be frustrated if its meaning or effect were determined, in whole or in part, by the subsequent statements or conduct of the parties which permitted conflicting inferences regarding their subjective

11

68

contemplation.  Therefore, the parties agree this Agreement
may not be altered or amended in any respect except by a
writing specifically referring to and incorporating by
reference this Agreement and executed in the same manner.

23.  If any provision of this Agreement is determined
to be invalid, illegal, void, or unenforceable, then that
provision shall be deleted from this Agreement and this
Agreement shall be read as though the invalid, illegal,
void or unenforceable part was never included.  The
remaining provisions of this Agreement, excluding the
invalid, illegal, void or unenforceable provision shall
continue in full force and effect.  However, this provision
shall not be invoked or enforced in a manner that changes
the substantive provisions of this Agreement.

24.  Except as specifically stated to the contrary
herein, this Agreement shall bind the parties hereto and
their respective heirs, executors and administrators.

25.  The parties acknowledge and agree that he/she was
represented in connection with this Agreement by counsel of
his/her choosing; that he/she had its contents fully
explained to him/her by such counsel and is fully aware of
the contents and legal effect of this Agreement.  The
parties further acknowledge he/she discussed the concepts
of duress, fraud, and undue influence with their counsel;
that he/she had the opportunity to investigate the facts
and circumstances upon which this Agreement is based, that
neither of them is acting under duress, fraud, or undue
influence, and he/she is entering into this Agreement
voluntarily to effectuate his/her mutual intent and desire

12

69

to define his/her respective rights in the property and income of the other in the interests of harmony and mutual understanding, and for no other reason.

26. This Agreement was jointly negotiated by and between the parties. To the extent there is any uncertainty or ambiguity in this Agreement, neither party shall be deemed to have caused such uncertainty or ambiguity within the meaning of *Civil Code* §1654.

A. This Agreement and its terms are not standardized, nor are its provisions imposed or drafted by a party with superior bargaining power.

B. Each of the parties had the opportunity to negotiate, and did in fact negotiate, all of the terms and provisions of this Agreement.

C. The terms and provisions of this Agreement are within the reasonable expectations of the parties with respect to the subject matter of this Agreement.

D. This Agreement and its terms are not one-sided, oppressive, harsh, surprising, nor do they result from undue influence nor are they unfair to either party with respect to the subject matter of this Agreement.

E. Each of the parties to this Agreement had substantially equal bargaining power in negotiating the terms of this Agreement and in meaningfully choosing to enter into this Agreement.

F. All prior and concurrent agreements of the parties, if any, and all of their terms and provisions, are set forth in this Agreement and are superseded by this Agreement.

13

70

27.    The parties agree that Exhibits A and B to this Agreement shall be and shall remain strictly confidential and shall not be made a matter of public record nor shared or revealed to any person other than counsel for a party. In the event either party records this Agreement, the Exhibits shall be detached and shall not be recorded.

28.    This Agreement shall be interpreted and enforced in accordance with the laws of California. The parties expressly agree it is their intent that this Agreement covers all rights and property, real or personal, whether such property is situated within or without California, or within or without the United States of America.

29.    The parties expressly acknowledge and agree, in conformity with *Family Code* §1615, that this Agreement is voluntarily executed by the parties, that neither party waived, orally or in writing, the right to disclosure of the property, financial status or obligations of the other party, and that both parties had fair, reasonable and full knowledge of the assets, property and financial obligations of the other party.

30.    The parties acknowledge that they have been advised by their counsel that this Agreement will remain in full force and effect, and the transmutation of property contained herein will be binding upon the parties, in the event that one or both of the parties hereto files a petition seeking the dissolution of their marriage.

31.    The parties acknowledge that they have had the opportunity to be represented by separate counsel with

14

71

respect to the negotiations, drafting and execution of this Agreement. The foregoing notwithstanding, each party hereto has elected waive his/her right to separate independent counsel, and has relied upon Klueger & Stein, LLP as his/her counsel in the negotiations, drafting and execution of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement at the time and place written above.

GARY MEEK

JACQUELINE MEEK

15

72

## ATTORNEY'S CERTIFICATION

The undersigned, Robert F. Klueger, Esq., certifies that he is an attorney at law, duly licensed to practice law in California and that he was employed by GARY MEEK and JACQUELINE MEEK, the parties to this Agreement. The undersigned certifies that he advised GARY MEEK and JACQUELINE MEEK with respect to the provisions of this Agreement and explained to each of them their meaning and legal effect. Each of them acknowledged to the undersigned that he/she fully and completely understood the provisions of this Agreement and their legal consequences and that he/she acknowledged to the undersigned that she is entering into this Agreement voluntarily and free from duress, fraud or undue influence.

Klueger & Stein, LLP

Robert F. Klueger

16

73

## EXHIBIT A

### GARY MEEK'S SEPARATE PROPERTY

### ASSETS AS OF APPROXIMATELY DECEMBER 30, 2013

1.  All of the shares of common stock of AV Respiratory Services, Inc., a California corporation, including all of the assets, liabilities and business of the said corporation, having an agreed-upon fair market value of

$ 661,750.00

2.  A 0.151425% membership interest in HLHZ Investments II, LLC, a California limited liability company, having an agreed-upon fair market value of

$ 22,000.00

3.  A one-half interest as tenant in common in Chase Premier Checking Account No. 000008770249677, having a current balance of

$ 28,821.20

4.  2009 Acura TL 4d Sedan automobile, having a current blue book value of $17,221, encumbered by a security interest in the principal amount of $20,000, for a net book value of

0

5.  All of Gary Meek's personal clothing, jewelry and personal effects.

74

## EXHIBIT B

## JACQUELINE MEEK'S SEPARATE PROPERTY

## ASSETS AS OF APPROXIMATELY DECEMBER 30, 2013

1.   That parcel of real estate described as:

    Lot 4 of Tract 11098 in the City of Pasadena,
    County of Los Angeles, State of California, as
    per map recorded in Book 207 page 8 and 9 of maps
    in the office of the county recorder of said county,

and commonly known as 1535 Linda Vista Avenue, Pasadena California, 91103, and all of the furniture and furnishings therein contained, having an appraised value of $1,425,000 per appraisal report of Scott Kaye dated May 13, 2013, encumbered by a deed of trust securing the payment of a promissory note having an outstanding balance of $1,150,000, for a net equity of

$ 275,000.00

2.   A 2.165968% limited partnership interest in Globe Composite Solutions, Ltd., a Maryland limited partnership, having an agreed-upon fair market value of

$ 150,000.00

3.   Fidelity Advisor Managed Brokerage Account No. Z47105422, having a current balance of

$ 284,607.01

4.   Fidelity IRA Advisor Managed Brokerage Account No. 166108324, having a current balance of

$ 198,881.23

5.   A one-half interest as tenant in common in Chase Premier Checking Account No. 000008770249677, having a current balance of

$ 28,821.20

6.   Chase Premier Checking Account No. 000000920968354, having a current balance of

$58,633.54

7.   2011 Volvo XC60 T6 Sport Utility 4D automobile, having
a current blue book value of

$ 25,750.00

8.   All of Jacqueline Meek's personal clothing, jewelry and
personal effects.

76

RECORDING REQUEST BY
AND WHEN RECORDED MAIL TO:

Robert F. Klueger
 Klueger & Stein LLP
16000 Ventura Blvd. #1000
Encino CA 91436

## MEMORANDUM OF TRANSMUTATION AGREEMENT

THIS MEMORANDUM OF TRANSMUTATION AGREEMENT is made and entered into as of this 14th day of November, 2013, by and between Gary Meek, ("Gary") and Jacqueline Meek ("Jacqueline").

### WITNESSETH

1.      Gary and Jacqueline have entered into a Transmutation Agreement of even date herewith, whereby each of them has waived certain rights, title and interest in and to the property resulting from the personal services, skill, effort and work of the other during their entire marriage (which property, in accordance with the terms of the Transmutation Agreement, shall be the separate property of the other party), and in and to separate property of the other party owned or acquired before or during marriage.

2.      Gary and Jacqueline each, for valuable consideration and pursuant to the provisions of the Transmutation Agreement, hereby forever remises, releases and quitclaim to the other all right, title and interest which either might have (or hereafter acquire during their marriage) to real property interests now owned by the other party and held in such other party's sole name or as a fiduciary, or in any form of co-ownership with any other persons or entities and, except as provided in the Transmutation Agreement, to real property interests hereafter acquired by the other party and held in such other party's sole name or as a fiduciary or in any form of co-ownership with any other persons and entities.  All such real property interests now owned shall be the separate property of the party in whose name said property may be recorded and all such real property interests hereafter acquired, except as provided in the Transmutation Agreement, shall be the separate property of the party in whose name said property may be recorded.

3.      All of the terms, covenants and conditions of the unrecorded Transmutation Agreement of even date herewith, executed by Gary and Jacqueline, are hereby incorporated by reference and made a part hereof as fully and completely as if set forth herein.

4.     This memorandum is specifically intended, without limiting the generality of the foregoing provisions, to affirm the agreement of the parties that the real property described on Exhibit A attached hereto and made a part hereof is the sole and separate property of Jacqueline.

IN WITNESS HEREOF, the parties hereto have executed this Memorandum of Transmutation Agreement as of the date and year first above written.

"Gary"

Gary Meek

"Jacqueline"

Jacqueline Meek

## Acknowledgment

State of California          )
                             )
County of Los Angeles )

On November 14          , 2013, before me, ROBERT KLUEGER          , a Notary Public, personally appeared Gary Meek and Jacqueline Meek who proved to me on the basis of satisfactory evidence to be the person(s) whose names are subscribed to the within instrument, and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons or the entities upon behalf of which the persons acted, executed the instrument.

I HEREBY CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT WITNESS my hand and official seal.

Signature:

ROBERT F. KLUEGER
Commission # 2049611
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2017

<u>Exhibit A</u>

1. That certain parcel of real estate described as:

      Lot 4 of Tract No. 11098 in the City of Pasadena,
      County of Los Angeles, State of California, as per
      map recorded in book 207, pages 8 and 9 of maps,
      in the office of the county recorder of said county,

commonly known as 1535 Linda Vista Avenue, Pasadena, CA 91103

APN: 5704-021-022

# EXHIBIT 7



**This page is part of your document - DO NOT DISCARD**



## 20131815432



**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/27/13 AT 03:31PM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201312272880060

00008699613



005957687

**SEQ:
01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

**RECORDING REQUESTED BY:**
Robert F. Klueger
Klueger & Stein, LLP
16000 Ventura Boulevard,
Suite 1000
Encino, California 91436



12/27/2013

*20131815432*

**AND WHEN RECORDED MAIL TO:**
SAME AS ABOVE.

**MAIL TAX STATEMENTS TO:**
Trustee, The Meek Family Trust
1535 Linda Vista Avenue
Pasadena, California 91103

APN: 5704-021-022

## GRANT DEED

**GRANT DEED** (Excluded from Reappraisal under Proposition 13, *i.e.*, Calif. Const. Art 13A§1 et. seq.) The undersigned Grantors declare under penalty of perjury that the following is true and correct: **THERE IS NO CONSIDERATION FOR THIS TRANSFER.** Documentary transfer tax is **$ NONE.** "This conveyance establishes sole and separate property of a spouse R & T 11911."

**FOR NO CONSIDERATION, GRANTORS,** GARY ELBERT MEEK and JACQUELINE ANN MEEK, AS TRUSTEES OF THE MEEK FAMILY TRUST, DATED NOVEMBER 3, 1998, hereby **GRANTS** to GARY ELBERT MEEK and JACQUELINE ANN MEEK TRUSTEES, THE MEEK FAMILY TRUST, as the sole and separate property of Jacqueline Ann Meek, the following described real property in the City of Pasadena, County of Los Angeles, State of California:

**Lot 4 of Tract 11098, in the City of Pasadena, County of Los Angeles, State of California as per Map recorded in Book 207, Page 8 and 9 of Maps in the office of the County Recorder of said County.**

More commonly known as: 1535 Linda Vista Avenue, Pasadena, California 91103.

Order:  Doc: 2013-1815432 DED 12-27-2013                    Page 39 of 44                    Created By: Maria Villa  Printed: 3/14/2016 1:09:28 ...

81

Dated: November _14_, 2013

THE MEEK FAMILY TRUST, DATED
NOVEMBER 3, 1998

By: _____ Trustee
    Gary Elbert Meek, Trustee

By: _____
    Jacqueline Ann Meek, Trustee

STATE OF CALIFORNIA        )
                           )
COUNTY OF LOS ANGELES      )

On November _14_, 2013, before me, _ROBERT F. KLUEGER_, a notary
public, personally appeared **Gary Elbert Meek and Jacqueline Ann Meek**, who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument, and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s) or the entity on behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____
Notary Public

ROBERT F. KLUEGER
Commission # 2049611
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2017

# EXHIBIT 8



**This page is part of your document - DO NOT DISCARD**



# 20131815433



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/27/13 AT 03:31PM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201312272880060

00008699614



005957687

**SEQ:**
**02**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

Z

RECORDING REQUEST BY
AND WHEN RECORDED MAIL TO:

Robert F. Klueger
 Klueger & Stein LLP
16000 Ventura Blvd. #1000
Encino CA  91436



12/27/2013

*20131815433*

## MEMORANDUM OF TRANSMUTATION AGREEMENT

THIS MEMORANDUM OF TRANSMUTATION AGREEMENT is made and entered into as of this 14th day of November, 2013, by and between Gary Meek, ("Gary") and Jacqueline Meek ("Jacqueline").

### WITNESSETH

1.    Gary and Jacqueline have entered into a Transmutation Agreement of even date herewith, whereby each of them has waived certain rights, title and interest in and to the property resulting from the personal services, skill, effort and work of the other during their entire marriage (which property, in accordance with the terms of the Transmutation Agreement, shall be the separate property of the other party), and in and to separate property of the other party owned or acquired before or during marriage.

2.    Gary and Jacqueline each, for valuable consideration and pursuant to the provisions of the Transmutation Agreement, hereby forever remises, releases and quitclaim to the other all right, title and interest which either might have (or hereafter acquire during their marriage) to real property interests now owned by the other party and held in such other party's sole name or as a fiduciary, or in any form of co-ownership with any other persons or entities and, except as provided in the Transmutation Agreement, to real property interests hereafter acquired by the other party and held in such other party's sole name or as a fiduciary or in any form of co-ownership with any other persons and entities.   All such real property interests now owned shall be the separate property of the party in whose name said property may be recorded and all such real property interests hereafter acquired, except as provided in the Transmutation Agreement, shall be the separate property of the party in whose name said property may be recorded.

3.    All of the terms, covenants and conditions of the unrecorded Transmutation Agreement of even date herewith, executed by Gary and Jacqueline, are hereby incorporated by reference and made a part hereof as fully and completely as if set forth herein.

4.    This memorandum is specifically intended, without limiting the generality of the foregoing provisions, to affirm the agreement of the parties that the real property described on Exhibit A attached hereto and made a part hereof is the sole and separate property of Jacqueline.

IN WITNESS HEREOF, the parties hereto have executed this Memorandum of Transmutation Agreement as of the date and year first above written.

"Gary"

_____
Gary Meek

"Jacqueline"

_____
Jacqueline Meek

### Acknowledgment

State of California    )
                       )
County of Los Angeles )

On November 14_____, 2013, before me, ROBERT F. KLUEGER_____, a Notary Public, personally appeared Gary Meek and Jacqueline Meek who proved to me on the basis of satisfactory evidence to be the person(s) whose names are subscribed to the within instrument, and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons or the entities upon behalf of which the persons acted, executed the instrument.

I HEREBY CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT WITNESS my hand and official seal.

Signature: _____

ROBERT F. KLUEGER
Commission # 2049611
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2017

4

## Exhibit A

1. That certain parcel of real estate described as:

Lot 4 of Tract No. 11098 in the City of Pasadena,
County of Los Angeles, State of California, as per
map recorded in book 207, pages 8 and 9 of maps,
in the office of the county recorder of said county,

commonly known as 1535 Linda Vista Avenue, Pasadena, CA 91103

APN: 5704-021-022

# EXHIBIT 9

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address):*
Scott O. Smith, SBN 62839; Michael Muse-Fisher, SBN 253232
BUCHALTER NEMER
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-2457
TELEPHONE NO.: 213 891-0700    FAX NO. *(Optional):* 213 896-0400
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* East West Bank

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 400 Civic Center Plaza
MAILING ADDRESS:
CITY AND ZIP CODE: Pomona, CA 91766
BRANCH NAME: EAST DISTRICT

PLAINTIFF: EAST WEST BANK, etc.

DEFENDANT: A.V. RESPIRATORY SERVICES, etc. et al.

**FOR COURT USE ONLY**

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

**OCT - 9 2015**

Sherri R. Carter, Executive Officer/Clerk
By G. Berni, Deputy

| **JUDGMENT** | | | CASE NUMBER: |
|---|---|---|---|
| ☐ By Clerk | ☐ By Default | ☐ After Court Trial | KC067109 J |
| ☒ By Court | ☒ On Stipulation | ☐ Defendant Did Not Appear at Trial | |

**JUDGMENT**

1. ☐ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☐ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☒ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☒ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court    ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*                        ☐ Plaintiff's attorney *(name each):*
         (1)                                                (1)
         (2)                                                (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each):*                        ☐ Defendant's attorney *(name each):*
         (1)                                                (1)
         (2)                                                (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632)    ☐ was not    ☐ was requested.

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

**JUDGMENT**

Code of Civil Procedure, §§ 585, 664.6

American LegalNet, Inc.
www.FormsWorkflow.com

87

| | |
|---|---|
| PLAINTIFF: EAST WEST BANK, etc.<br><br>DEFENDANT: A.V. RESPIRATORY SERVICES, etc. et al. | CASE NUMBER:<br>KC067109 J |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☒ **THE COURT** ☐ **THE CLERK**

4. ☒ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

   a. ☒ for plaintiff *(name each):* East West Bank, a California corporation

      and against defendant *(names):* A.V. Respiratory Services, Inc., a California corporation, Gary E. Meek an individual
      ☐ Continued on Attachment 5a.

   b. ☐ for defendant *(name each):*

   c. ☐ for cross-complainant *(name each):*

      and against cross-defendant *(name each):*
      ☐ Continued on Attachment 5c.

   d. ☐ for cross-defendant *(name each):*

6. **Amount.**

   a. ☒ Defendant named in item 5a above must pay plaintiff on the complaint:

   c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| (1) | ☒ | Damages | $ 1,973,030.66 | (1) | ☐ | Damages | $ |
| (2) | ☐ | Prejudgment interest at the annual rate of    % | $ 0.00 | (2) | ☐ | Prejudgment interest at the annual rate of    % | $ |
| (3) | ☒ | Attorney fees | $ 64,713.50 | (3) | ☐ | Attorney fees | $ |
| (4) | ☒ | Costs | $ 2,923.49 | (4) | ☐ | Costs | $ |
| (5) | ☐ | Other (specify): | $ 0.00 | (5) | ☐ | Other (specify): | $ |
| (6) | | **TOTAL** | $ 2,040,667.65 | (6) | | **TOTAL** | $ 0.00 |

   b. ☐ Plaintiff to receive nothing from defendant named in item 5b.
      ☐ Defendant named in item 5b to recover costs $
      ☐ and attorney fees $

   d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
      ☐ Cross-defendant named in item 5d to recover costs $
      ☐ and attorney fees $

7. ☒ Other *(specify):* See Attachment 7.

Date: **OCT  9 2015**
☒ _____
*Dan T. Oki*
**DAN T. OKI**
JUDICIAL OFFICER

Date: _____
☐ Clerk, by _____, Deputy

---

| (SEAL) | **CLERK'S CERTIFICATE** *(Optional)* |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court.<br><br>Date:<br><br>Clerk, by _____, Deputy |

Page 2 of 2

JUD-100 [New January 1, 2002]

**JUDGMENT**

American LegalNet, Inc.
www.FormsWorkflow.com

88

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| East West Bank v. A.V. Respiratory | KC067109 J |

ATTACHMENT *(Number):* 7

*(This Attachment may be used with any Judicial Council form.)*

Plaintiff shall have and recover from Defendants the following personal property. In the event some or all of the personal property is recovered, EWB shall sell it in a commercially reasonable manner and shall apply the net proceeds derived from its disposition to partially satisfy the Judgment Amount:

All AVRS' inventory, chattel paper, accounts, equipment and general intangibles, including all the following, whether then owned or thereafter acquired, whether then existing or thereafter arising and wherever located together with all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the foregoing, all products and produce of any of the foregoing, all accounts, general intangibles, instruments, rents, monies, payments, and all other rights arising out of a sale, lease, consignment or other disposition of any of the foregoing, all proceeds including insurance proceeds from the sale, destruction, loss or other disposition of any of the foregoing and sums due from a third party who has damaged or destroyed the foregoing property or from that party's insurer, whether due to judgment, settlement or other process, all records and data relating to the foregoing whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of AVRS's right, title and interest in and to all computer software required to utilize, create, maintain and process any such records or date on electronic media (the "Collateral").

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*.

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

89

1  BUCHALTER NEMER
   A Professional Corporation
2  SCOTT O. SMITH (SBN: 62839)
   MICHAEL J. MUSE-FISHER (SBN: 253232)
3  1000 Wilshire Boulevard, Suite 1500
   Los Angeles, CA 90017-2457
4  Telephone: (213) 891-0700
   Facsimile: (213) 896-0400
5  Email: ssmith@buchalter.com
           mmuse-fisher@buchalter.com
6
7  Attorneys for Plaintiff, EAST WEST BANK, a California
   corporation

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT - 9 2015

Sherri R. Carter, Executive Officer/Clerk
By G. Berni, Deputy

RECEIVED
OCT 07 2015
EAST DISTRICT

Con formed
ORIGINAL

8

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10          COUNTY OF LOS ANGELES – EAST DISTRICT

11

12  EAST WEST BANK, a California          CASE NO. KC067109 J
    corporation,                          Assigned to Hon. Judge Dan Thomas Oki
13
                    Plaintiff,
14
         vs.                              STIPULATION FOR IMMEDIATE ENTRY
                                          OF JUDGMENT IN FAVOR OF EAST
15  A.V. RESPIRATORY SERVICES, INC., a    WEST BANK AND AGAINST A.V.
    California corporation; GARY E. MEEK, RESPIRATORY SERVICES, INC AND
16  also known as GARY ELBERT MEEK, an    GARY E. MEEK
    individual; JACQUELINE ANN MEEK,
17  an individual; GARY ELBERT MEEK and
    JACQUELINE ANN MEEK, TRUSTEES
18  OF THE MEEK FAMILY TRUST,
    DATED NOVEMBER 3, 1998; and DOES
19  1 through 40, inclusive,
20                  Defendants.
21
22
23
24
25
26
27
28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18929904V3

STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK

1         IT IS HEREBY STIPULATED AND AGREED by and between Plaintiff East West

2    Bank, a California corporation ("EWB" or "Plaintiff"), on the one hand, and defendants Gary E.

3    Meek, an individual ("Mr. Meek"), and A.V. Respiratory Services, Inc., a California corporation

4    ("AVRS" and together with Mr. Meek, collectively the "Defendants"), on the other hand, that

5    Plaintiff shall have and recover from the Defendants, jointly and severally, the sum of

6    $1,973,030.66, plus attorneys' fees in the sum of $64,713.50, and costs of $2,923.49 for a total

7    sum of $2,040,667.65 (the "Judgment Amount").

8         IT IS FURTHER STIPULATED AND AGREED THAT EWB shall have and recover

9    from Defendants the following personal property. In the event some or all of the personal

10   property is recovered, EWB shall sell it in a commercially reasonable manner and shall apply the

11   net proceeds derived from its disposition to partially satisfy the Judgment Amount:

12           All AVRS' inventory, chattel paper, accounts, equipment and
general intangibles, including all the following, whether then
13   owned or thereafter acquired, whether then existing or thereafter
arising and wherever located together with all accessions,
14   attachments, accessories, tools, parts, supplies, replacements of and
additions to any of the foregoing, all products and produce of any of
15   the foregoing, all accounts, general intangibles, instruments, rents,
monies, payments, and all other rights arising out of a sale, lease,
16   consignment or other disposition of any of the foregoing, all
proceeds including insurance proceeds from the sale, destruction,
17   loss or other disposition of any of the foregoing and sums due from
a third party who has damaged or destroyed the foregoing property
18   or from that party's insurer, whether due to judgment, settlement or
other process, all records and data relating to the foregoing whether
19   in the form of a writing, photograph, microfilm, microfiche, or
electronic media, together with all of AVRS's right, title and
20   interest in and to all computer software required to utilize, create,
maintain and process any such records or date on electronic media
21   (the "Collateral").

22        IT IS FURTHER STIPULATED AND AGREED THAT Judgment for the full

23   Judgment Amount and recovery of the Collateral shall be entered immediately in favor of EWB

24   and against the Defendants, in accordance with the Judgment, a true and correct copy of which is

25   attached as Exhibit "A." Except for the filing of abstracts of judgment in all countries where

26   Defendants may own real property as well as UCC judgment liens against Defendants' personal

27   property, EWB agrees to forbear until February 1, 2016 before taking any further actions to

28   enforce the Judgment.

BN 18929904V3

1

**STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK**

1    **IT IS FURTHER STIPULATED AND AGREED THAT** any judgment entered

2    pursuant to this Stipulation may be, and is, a separate judgment against less than all defendants

3    pursuant to *California Code of Civil Procedure* § 579.

4    **IT IS FURTHER STIPULATED AND AGREED THAT** Defendants agree to waive

5    the rights and time limit provisions of Sections 583.160(a), 583.210, 583.250, 583.310, 583.360,

6    583.410 and 583.420 of the *California Code of Civil Procedure*.

7    **IT IS FURTHER STIPULATED AND AGREE THAT** Defendants hereby expressly

8    waive any and all benefits that might otherwise be available to the them under *California Civil*

9    *Code* Sections 2809, 2810, 2819, 2839, 2845, 2849, 2850, 2899 and 3433 (as such sections may

10   be amended or recodified from time to time), *UCC* Section 9112 (as such section may be

11   amended or recodified from time to time) and *California Code of Civil Procedure* Sections 580a,

12   580b, 580d and 726 (as such sections may be amended or recodified from time to time).

13    **IT IS FURTHER STIPULATED AND AGREED THAT** except for documents or

14   other tangible items already produced prior to the execution of this Stipulation by Plaintiff to any

15   Person [including any natural person, corporation, partnership, association, trustee, legal

16   representative, or other business entity] or to any governmental entity [including any city,

17   municipality, state or federal organization or agency], and except as otherwise required by law,

18   Plaintiff agrees to notify Defendants of any demand or request by a third party that seeks the

19   production of documents or tangible items that were produced to Plaintiff, or by Plaintiff, during

20   discovery in this lawsuit.  Plaintiff shall have no obligation to notify Defendants under this

21   Paragraph if it appears on the face of the third-party's demand or request that Defendants have

22   already received notice of the demand or request.  Further, nothing herein is intended, nor shall it,

23   impact or prohibit Plaintiff from providing the requested documents or tangible things in response

24   to any request by a governmental entity, including but not limited to local, state, or federal law

25   enforcement, as well as any subpoena, subpoena duces tecum, or discovery request in any state,

26   federal or bankruptcy proceeding.

27    **IT IS FURTHER STIPULATED AND AGREED THAT** a Commissioner of the

28   Court may hear any proceedings arising out of this Stipulation for Entry of Judgment.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18929904V3          2

STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK

92

1   **IT IS FURTHER STIPULATED AND AGREED THAT** Defendants hereby release, acquit,

2   and forever discharge Plaintiff and its affiliates, along with their parents, subsidiaries, affiliates,

3   officers, directors, agents, servants, employees, attorneys, successors and assigns from any and all

4   claims, actions demands, causes of action, suits, debts, liens, liabilities, damages, interest,

5   attorney's fees, fines, losses, and expenses of any kind or nature whatsoever, whether known or

6   unknown, foreseen or unforeseen, patent or latent, legal or equitable, arising prior to the date

7   hereof, including, without limitation, tort claims, demands, actions and causes of action of any

8   nature whatsoever arising under or relating to any agreements between Plaintiff and Defendants

9   executed prior to this Stipulation, or any of the transactions related thereto, and waive the

10   application of California Civil Code Section 1542, which reads as follows:

11           "A general release does not extend to claims which the creditor
             does not know or suspect to exist in his or her favor at the time of
12           executing the release, which if known by him or her must have
             materially affected his settlement with the debtor."
13

14           **IT IS FURTHER STIPULATED AND AGREED THAT** Defendants at all times

15   material hereto have had the opportunity to consult with legal counsel of their own choosing

16   concerning their rights with respect to the form and content of this Stipulation for Entry of

17   Judgment and the advisability of executing same.

18           **IT IS FURTHER STIPULATED AND AGREED THAT** the Defendants agree to

19   waive the filing of military affidavits, filing and serving of a copy of the Memorandum of Costs

20   and Disbursements, Notice of Entry of Judgment, and that Judgment may be entered herewith by

21   the Court.

22   ///

23   ///

24   ///

25   ///

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18929904V3

3

STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK

1     IT IS FURTHER STIPULATED AND AGREED THAT this Stipulation may be

2   signed in one or more counterparts, by original signature, facsimile signature, or pdf signature,

3   each of which shall be deemed an original. This Stipulation shall be deemed fully executed and

4   effective when all parties have executed at least one of the counterparts, even though no single

5   counterpart bears all such signatures. Delivery of an executed counterpart of this Stipulation by

6   facsimile or as a pdf attachment to an email shall be equally as effective as delivery of a manually

7   executed counterpart.

8   "PLAINTIFF"

9   DATED: September 30, 2015            EAST WEST BANK, a California corporation

10

11

12

13                                        Name: ARTHUR HO
                                          Title: FVP/SBA OPERATIONS MANAGER
14

15  "DEFENDANTS"

16  DATED: September ___, 2015           A.V. RESPIRATORY SERVICES, INC.,
                                          a California corporation
17

18

19                                        Name:
                                          Title:
20

21

22  DATED: September ___, 2015           GARY E. MEEK

23

24

25

26

27  [SIGNATURES CONTINUED ON FOLLOWING PAGE]

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18929904V3                            4

STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK

1    **IT IS FURTHER STIPULATED AND AGREED THAT** this Stipulation may be
2    signed in one or more counterparts, by original signature, facsimile signature, or .pdf signature,
3    each of which shall be deemed an original. This Stipulation shall be deemed fully executed and
4    effective when all parties have executed at least one of the counterparts, even though no single
5    counterpart bears all such signatures. Delivery of an executed counterpart of this Stipulation by
6    facsimile or as a pdf attachment to an email shall be equally as effective as delivery of a manually
7    executed counterpart.

8    **"PLAINTIFF"**

9    DATED: September ___, 2015                EAST WEST BANK, a California corporation

10

11

12

13                                            Name: _____
14                                            Title: _____

15   **"DEFENDANTS"**

16   DATED: September 30, 2015                 A.V. RESPIRATORY SERVICES, INC.,
                                               a California corporation
17

18

19                                            Name: _Gary Meek_____
20                                            Title: _CFO_____

21

22   DATED: September 30, 2015                 GARY E. MEEK

23

24

25

26

27   *[SIGNATURES CONTINUED ON FOLLOWING PAGE]*

28

BN 18929904V3                                4

STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK

95

1    APPROVED AS TO FORM:

2    DATED: September 2̃0, 2015      BUCHALTER NEMER

3                                    A Professional Corporation

4

5                                    By: _____

6                                          SCOTT O. SMITH
                                     MICHAEL J. MUSE-FISHER

7                                       Attorneys for Plaintiff
                            EAST WEST BANK, a California corporation

8

9    DATED: September ___, 2015      LAW OFFICES OF J.T. FOX
                                     A Professional Corporation

10

11                                    By: _____

12                                             J.T. FOX
                                      Attorneys for Defendants

13                            GARY E. MEEK and A.V. RESPIRATORY
                                        SERVICES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18929904V3

5

STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK

1    **APPROVED AS TO FORM:**

2    DATED: September __, 2015                    BUCHALTER NEMER
                                                  A Professional Corporation
3

4

5                                                By:_____
                                                        SCOTT O. SMITH
6                                                   MICHAEL J. MUSE-FISHER
                                                      Attorneys for Plaintiff
7                                            EAST WEST BANK, a California corporation

8

9    DATED: September 30, 2015                   LAW OFFICES OF J.T. FOX
                                                 A Professional Corporation
10

11                                               By:_____
                                                          J.T. FOX
12                                                 Attorneys for Defendants
                                               GARY E. MEEK and A.V. RESPIRATORY
13                                                     SERVICES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A Professional Corporation
LOS ANGELES

BN 18929904V3                          5

STIPULATION FOR IMMEDIATE ENTRY OF JUDGMENT IN FAVOR OF EAST WEST BANK AND
AGAINST A.V. RESPIRATORY SERVICES, INC AND GARY E. MEEK

97

# EXHIBIT A

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Scott O. Smith, SBN 62839; Michael Muse-Fisher, SBN 253232<br>BUCHALTER NEMER<br>1000 Wilshire Blvd., Suite 1500<br>Los Angeles, CA 90017-2457 | |

TELEPHONE NO.: 213 891-0700     FAX NO. (Optional): 213 896-0400

E-MAIL ADDRESS (Optional):

ATTORNEY FOR (Name):  East West Bank

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS:  400 Civic Center Plaza
MAILING ADDRESS:
CITY AND ZIP CODE:  Pomona, CA 91766
BRANCH NAME:  EAST DISTRICT

PLAINTIFF: EAST WEST BANK, etc.

DEFENDANT: A.V. RESPIRATORY SERVICES, etc. et al.

| JUDGMENT | CASE NUMBER: |
|---|---|
| ☐ By Clerk  ☐ By Default  ☐ After Court Trial<br>☒ By Court  ☒ On Stipulation  ☐ Defendant Did Not Appear at Trial | KC067109 J |

## JUDGMENT

1. ☐ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ Clerk's Judgment (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☐ Court Judgment (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☒ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☒ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on (date and time):
      before (name of judicial officer):
   b. Appearances by:
      ☐ Plaintiff (name each):                    ☐ Plaintiff's attorney (name each):
         (1)                                           (1)
         (2)                                           (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant (name each):                     ☐ Defendant's attorney (name each):
         (1)                                           (1)
         (2)                                           (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632)  ☐ was not  ☐ was requested.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

**JUDGMENT**

Code of Civil Procedure, §§ 585, 664.6

American LegalNet, Inc.
www.FormsWorkflow.com

99

| PLAINTIFF: EAST WEST BANK, etc. | CASE NUMBER: |
|---|---|
| DEFENDANT: A.V. RESPIRATORY SERVICES, etc. et al. | KC067109 J |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☒ THE COURT    ☐ THE CLERK

4. ☒ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties. Judgment is**

    a. ☒ for plaintiff *(name each):* East West Bank, a California corporation

      and against defendant *(names):* A.V. Respiratory Services, Inc., a California corporation, Gary E. Meek an individual
      ☐ Continued on Attachment 5a.

    c. ☐ for cross-complainant *(name each):*

      and against cross-defendant *(name each):*

      ☐ Continued on Attachment 5c.

    b. ☐ for defendant *(name each):*

    d. ☐ for cross-defendant *(name each):*

6. **Amount.**

    a. ☒ Defendant named in item 5a above must pay plaintiff on the complaint:

    c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) | ☒ | Damages | $ | 1,973,030.66 |
|---|---|---|---|---|
| (2) | ☐ | Prejudgment interest at the annual rate of        % | $ | 0.00 |
| (3) | ☒ | Attorney fees | $ | 64,713.50 |
| (4) | ☒ | Costs | $ | 2,923.49 |
| (5) | ☐ | Other (specify): | $ | 0.00 |
| (6) | | **TOTAL** | $ | 2,040,667.65 |

| (1) | ☐ | Damages | $ | |
|---|---|---|---|---|
| (2) | ☐ | Prejudgment interest at the annual rate of        % | $ | |
| (3) | ☐ | Attorney fees | $ | |
| (4) | ☐ | Costs | $ | |
| (5) | ☐ | Other (specify): | $ | |
| (6) | | **TOTAL** | $ | 0.00 |

    b. ☐ Plaintiff to receive nothing from defendant named in item 5b.
      ☐ Defendant named in item 5b to recover costs $
        ☐ and attorney fees $

    d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
      ☐ Cross-defendant named in item 5d to recover costs $
        ☐ and attorney fees $

7. ☒ **Other** *(specify):* See Attachment 7.

Date: _____    ☐ _____
                                                 JUDICIAL OFFICER

Date: _____    ☐ Clerk, by _____, Deputy

---

(SEAL)

**CLERK'S CERTIFICATE** *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by _____, Deputy

JUD-100 [New January 1, 2002]

**JUDGMENT**

American LegalNet, Inc.
www.FormsWorkflow.com

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| East West Bank v. A.V. Respiratory | KC067109 J |

ATTACHMENT (Number): 7 _____

*(This Attachment may be used with any Judicial Council form.)*

Plaintiff shall have and recover from Defendants the following personal property. In the event some or all of the personal property is recovered, EWB shall sell it in a commercially reasonable manner and shall apply the net proceeds derived from its disposition to partially satisfy the Judgment Amount:

All AVRS' inventory, chattel paper, accounts, equipment and general intangibles, including all the following, whether then owned or thereafter acquired, whether then existing or thereafter arising and wherever located together with all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the foregoing, all products and produce of any of the foregoing, all accounts, general intangibles, instruments, rents, monies, payments, and all other rights arising out of a sale, lease, consignment or other disposition of any of the foregoing, all proceeds including insurance proceeds from the sale, destruction, loss or other disposition of any of the foregoing and sums due from a third party who has damaged or destroyed the foregoing property or from that party's insurer, whether due to judgment, settlement or other process, all records and data relating to the foregoing whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of AVRS's right, title and interest in and to all computer software required to utilize, create, maintain and process any such records or date on electronic media (the "Collateral").

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

101

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS RICHARD K. DIAMOND, Chapter 7 Trustee | DEFENDANTS JACQUELINE ANN MEEK, individually and in her capacity as Trustee of the MEEK FAMILY TRUST dated November 3, 1998 |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) Elissa D. Miller (CA Bar No. 120029) Steven F. Werth (CA Bar No. 205434) SulmeyerKupetz 333 South Hope Street, Thirty-Fifth Floor Los Angeles, California 90071 Telephone: 213.626.2311 Facsimile: 213.629.4520 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only) ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor    ☒ Other ☐ Trustee | PARTY (Check One Box Only) ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor    ☒ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint for Avoidance of Voidable Transfer 11 U.S.C. § 544 and Cal. Civil Code 3439.04(a)(1), Cal. Civil Code 3439.04(a)(2), Cal. Civil Code 3439.05; Recovery of Transferred Property or Value Thereof; Preservation of Avoided Transfer; Turnover of Property; Declaratory Relief; and Accounting

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 70 01( 1) – Recovery of Money/Property**
☐ 11-Recovery of money/propert y - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 70 01 (2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001( 3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4 ) – Objection/ Revocation of Discharge**
☐ 41-Objection/re vocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 6 6 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 70 01(6) – Dischargeability (continued)**
☐ 61 -Dischargeability- §523(a)(5 ), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 6 5 -Dischargeability - other

**FRBP 70 01(7) – Injunctive Relief**
☐ 71 -Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 70 01(8) Subordination of Claim or Interest**
☐ 81 -Subordination of claim or interest

**FRBP 70 01(9) Declaratory Judgment**
☐ 91 -Declaratory judgment

**FRBP 70 01(10) Deter mi nation of Remove d Act ion**
☐ 01 -Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | ☐ Demand $ |
| Other Relief Sought | |

American LegalNet, Inc.
www.FormsWorkFlow.com

102

Case 2:16-ap-01389-TD   Doc 1   Filed 08/22/16   Entered 08/22/16 12:16:35   Desc
Main Document      Page 112 of 114

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>GARY MEEK | BANKRUPTCY CASE NO.<br>2:16-bk-12351-TD | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>THOMAS B. DONOVAN |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

/s/Elissa D. Miller

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| August 22, 2016 | Elissa D. Miller |

## INSTRUCTIONS

   The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

   A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

   The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

American LegalNet, Inc.
www.FormsWorkFlow.com

103

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Elissa D. Miller (CA Bar No. 120029) *emiller@sulmeyerlaw.com* Steven F. Werth (CA Bar No. 205434) *swerth@sulmeyerlaw.com* SulmeyerKupetz 333 South Hope Street, Thirty-Fifth Floor Los Angeles, California 90071 Telephone: 213.5.626.2311 Facsimile: 213.626.4520  *Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| In re: GARY MEEK, | CASE NO.: 2:16-bk-12351-TD |
|---|---|
| | CHAPTER: 7 |
| Debtor(s). | ADVERSARY NUMBER: |
| RICHARD K. DIAMOND, Chapter 7 Trustee, Plaintiff(s) Versus JACQUELINE ANN MEEK, individually and in her capacity as Trustee of the MEEK FAMILY TRUST dated November 3, 1998, Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: Time: Courtroom: | Place: ☒ 255 East Temple Street, Los Angeles, CA 90012 ☐ 3420 Twelfth Street, Riverside, CA 92501 ☐ 411 West Fourth Street, Santa Ana, CA 92701 ☐ 1415 State Street, Santa Barbara, CA 93101 ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2012                           Page 1                    **F 7004-1.SUMMONS.ADV.PROC**

104

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS. REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: ___

By: _____

Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.